J. B. CRAWFORD v. MARY WILLOUGHBY AND HER HUSBAND,
H. L. WILLOUGHBY.

(Filed 6 October, 1926.)

**1. Equity—Reformation of Instruments—Deeds and Conveyances—Mistake—Burden of Proof.**

Equity will not decree the reformation of a deed for the mistake of the draughtsman in not incorporating conditions in the instrument as both the parties had directed, unless the party seeking this relief establishes by strong, clear and cogent proof.that the conditions omitted from the deed were substantial and material, and that it was an omission due solely to the mistake of the draughtsman, and upon which both parties had agreed.

**2. Same—Evidence—Appeal and Error.**

Where the grantor in a deed seeks to have it reformed so as to include a condition subsequent that the grantee was to take in remainder after the reservation of a life estate, upon the grantee's supporting him or providing him a home in his old age, etc., evidence tending to show that he had consulted an attorney who drew the conveyance as written, who had read it over to him after his stenographer had written it, that it was written in accordance with instructions given; that he then executed it and carried it away and delivered it to the grantee, and the only evidence in his favor testified to by himself found against him by the jury, was that he was too drunk to understand what he was doing, is insufficient to support a judgment ordering a reformation of the instrument rendered in the Superior Court.

APPEAL by defendants from *Nunn, J.,* at April Term, 1926, of PITT. New trial.

On 28 June, 1921, plaintiff executed a deed by which he conveyed to defendant, Mary Willoughby, the land described therein, reserving to himself, however, an estate therein for his life. The deed contains the following recitals:

"Whereas, the said Mary Willoughby is a cousin of the said J. B. Crawford, and has always been near and dear to him, and

Whereas, it is agreed and understood that the said Mary Willoughby has promised and does hereby promise the said J. B. Crawford a home for the remainder of his natural life; and

Whereas, the said J. B. Crawford is the owner of a certain farm in Beaver Dam Township, Pitt County, North Carolina:

Now, therefore, in consideration of the premises, and the natural love and affection which the said J. B. Crawford bears for his said cousin, Mary Willoughby, and of ten dollars to him paid by the said Mary Willoughby, the receipt of which is hereby acknowledged, the said J. B. Crawford, has bargained, sold and conveyed," etc.

---

CRAWFORD *v.* WILLOUGHBY.

---

Summons in this action was issued 11 October, 1922; in his complaint, plaintiff sets up two causes of action, and prays judgment that said deed be declared null and void, and of no effect, upon the allegations in each of said causes of action.

Plaintiff alleges:

First. That it was agreed between plaintiff and defendant that if plaintiff would execute a deed conveying to her his land, subject to his life estate, defendant and her husband would move to plaintiff's land, and there live with him and maintain and support him during the remainder of his life; that if at any time thereafter she failed and refused to perform her said agreement, the said deed should be null and void and of no effect;

That the said condition, to wit: That upon the failure of defendant to continue to live with plaintiff, and to maintain and support him, the said deed was to be null and void—was omitted from said deed by the mistake of the draughtsman; that plaintiff is an ignorant and illiterate man, and did not discover, until after the deed had been delivered and recorded, that said condition had been omitted from the deed; that defendant has failed to perform said conditions; wherefore plaintiff prays that said deed be reformed by incorporating therein said condition, and that it be adjudged that defendant has forfeited all right, title and estate in and to said land, under the deed.

Second. That at the time of the execution of said deed, plaintiff was under the influence of intoxicating liquors to such an extent, that he did not have sufficient mental capacity to execute a deed; that defendants, by fraudulent acts and conduct, as alleged in the complaint, procured the execution of said deed by plaintiff; wherefore plaintiff prays judgment that said deed be canceled and set aside.

The verdict of the jury was as follows:

"1. Was the condition 'that if at any time thereafter she failed and refused to live with the plaintiff, and maintain and nurse him in his sickness and care for him in his old age, said deed was to be null and void and of no effect,' left out of the deed executed by plaintiff to defendant through the mistake of the draughtsman? Answer: Yes.

2. If so, has defendant failed to perform said condition? Answer: Yes.

3. Was the plaintiff at the time of the execution of the deed to the defendant under the influence of intoxicating liquors to such an extent as to render him incapable of having sufficient mental capacity to execute a deed? Answer: No.

4. Did the defendant and her husband by their fraudulent acts and conduct as alleged in the complaint, secure the execution of the deed from plaintiff to defendant? Answer: No.

5. Did defendant fraudulently fail and refuse to render said services to the plaintiff? Answer: No."

Upon the said verdict, it was ordered and decreed that the deed be reformed as prayed by plaintiffs, and that the defendant, Mary Willoughby, had forfeited all right, title and estate in and to the land described therein, and that said deed be canceled and set aside. From the judgment rendered, defendants appealed to the Supreme Court.

*F. G. James & Son, Albion Dunn for plaintiff.*
*Julius Brown, L. W. Gaylord for defendants.*

CONNOR, J. Plaintiff having failed to sustain the allegations upon which he sought relief on the second cause of action set out in his complaint, defendants present to this Court, on their appeal, only their assignments of error, based upon exceptions pertinent to the first cause of action. They rely chiefly upon their exception to the refusal of the court to allow their motion for judgment as of nonsuit, made at the close of all the evidence, under C. S., 567.

The principle that a Court of Equity, or a court exercising equitable jurisdiction, will decree the reformation of a deed or written instrument, from which a stipulation of the parties, with respect to some material matter, has been omitted by the mistake or inadvertence of the draughtsman, is well settled, and frequently applied. *Strickland v. Shearon,* 191 N. C., 560. The equity for the reformation of a deed or written instrument extends to the inadvertence or mistake of the draughtsman who writes the deed or instrument. If he fails to express the terms as agreed upon by the parties, the deed or instrument will be so corrected as to be brought into harmony with the true intention of the parties. *Sills v. Ford,* 171 N. C., 733. All the authorities are agreed, says *Hoke, J.,* in *King v. Hobbs,* 139 N. C., 170, that a deed or written instrument will be reformed so as to express the true intent of the parties when by a mistake or inadvertence of the draughtsman a material stipulation has been omitted from the deed or instrument as written. If the deed or written instrument fails to express the true intention of the parties, it may be reformed by a judgment or decree of the Court, to the end that it shall express such intent whether the failure is due to mutual mistake of the parties, *Maxwell v. Bank,* 175 N. C., 183, to the mistake of one, and the fraud of the other party, *Potato Co. v. Jeanette,* 174 N. C., 236, or to the mistake of the draughtsman, *Pelletier v. Cooperage Co.,* 158 N. C., 405.

The party asking for relief by reformation of a deed or written instrument, must allege and prove, first, that a material stipulation, as alleged, was agreed upon by the parties, to be incorporated in the deed or

instrument as written, and second, that such stipulation was omitted from the deed or instrument as written, by mistake, either of both parties, or of one party, induced by the fraud of the other, or by the mistake of the draughtsman. Equity will give relief by reformation only when a mistake has been made, and the deed or written instrument because of the mistake does not express the true intent of both parties. The mistake of one party to the deed, or instrument, alone, not induced by the fraud of the other, affords no ground for relief by reformation.

*Walker, J.,* in *Long v. Guaranty Co.,* 178 N. C., 503, speaking of the distinction between cancellation or rescission and reformation of a written instrument, says: "A noted text writer says that courts of equity do not grant the high remedy of reformation upon a probability, or even upon a mere preponderance of evidence, but only upon a certainty of error. Pomeroy on Eq. Jur., sec. 859. . . . A person who seeks to rectify a deed on the ground of mistake must establish, in the clearest and most satisfactory manner, that the alleged intention to which he desires it to be made comformable continued concurrently in the minds of all parties down to the time of its execution; and also must be able to show exactly and precisely the form to which the deed ought to have been brought, and that the omission of some material thing was caused by their mistake. To reform a contract, and then enforce it *in its new* shape, calls for a much greater exercise of the power of a chancellor than simply to set the transaction aside. Reformation is a much more delicate remedy than rescission. Hence, in order to justify a decree of reformation in cases of pure mistake, it is necessary that the mistake should have been mutual." A court of equity cannot, and should not undertake to make a new contract between the parties by reformation; it may by cancellation or rescission relieve a party from an alleged contractual obligation or liability, which he has in fact not undertaken or incurred; it cannot, however, impose upon him a liability which he has not assumed, or an obligation which he has not undertaken. *Allen v. R. R.,* 171 N. C., 339; *Shook v. Love,* 170 N. C., 99; *Dickey v. Cooper,* 170 N. C., 489.

The stipulation or condition, alleged in the complaint to have been agreed upon by the parties, and omitted from the deed by the draughtsman, was material to the relief sought by plaintiff upon his first cause of action; the recitals in the deed are clearly not sufficient, under the decisions of this Court, to impose upon defendant's estate in the land, conveyed to her by plaintiff, a condition subsequent, to be enforced by the forfeiture of her estate. Whether such recitals can be construed as constituting a covenant, for the breach of which plaintiff can recover damages, is not presented on this record. The learned counsel who drew the complaint in this action was evidently of the opinion, that under

our decisions, a forfeiture could not be decreed, unless the deed was reformed by incorporating therein the condition alleged to have been agreed upon by the parties and omitted by the mistake of the draughtsman. The distinction between covenants, to be enforced by damages, and conditions subsequent, to be enforced by forfeiture, has been frequently discussed and applied by this Court. See *Cook v. Sink,* 190 N. C., 620; *Askew v. Dildy,* 188 N. C., 147; *Fleming v. Motz,* 187 N. C., 593; *Hinton v. Vinson,* 180 N. C., 393; *Bailey v. Bailey,* 172 N. C., 671; *Shook v. Love,* 170 N. C., 101; *Brittain v. Taylor,* 168 N. C., 271; *Helms v. Helms,* 135 N. C., 164; *S. c.,* 137 N. C., 207.

The evidence submitted to the jury, pertinent to the first issue, involving the allegations with respect to the agreement alleged to have been entered into by plaintiff and defendant, and the omission of such agreement from the deed by the draughtsman, tends to show that plaintiff, a childless widower, of about 63 years of age, had frequently expressed a purpose to "give" his land to defendant, a cousin, at whose home he was a frequent visitor; that defendant had promised to take care of him and to provide a home for him; that on 28 June, 1921, plaintiff requested defendant to go with him to Farmville, N. C.; that she complied with this request, and that when they arrived at Farmville, plaintiff left defendant and went to the office of an attorney; that he requested the attorney to write a deed, advising him of his wishes and purposes; that the attorney, after discussing the matter at length with plaintiff, advising him of the difference in effect between a will and a deed with reservation of a life estate in the grantor, dictated the deed to his stenographer, who was the only other person present in the office at the time; that after she had written the deed, it was read by the attorney to plaintiff, who thereupon signed it and acknowledged its execution before a notary public; that plaintiff then went to defendant and delivered the deed to her. Plaintiff and defendant then went to the county seat; the deed was probated and recorded on the same day that it was executed.

Plaintiff testified that he was so drunk when he went into the office of the attorney at Farmville that he was unable to remember his conversation with the attorney; he thus accounts for his failure to testify as to his conversation with the attorney or as to his instructions to him relative to the drawing of the deed. Both the attorney and his stenographer testified that plaintiff was not drunk while he was in the office, and the jury has so found. The testimony of both the attorney and the stenographer was to the effect that the deed was written in accordance with the instructions of plaintiff, after he had been fully advised by the attorney of its legal effect as a conveyance of his land to defendant.

There is no evidence set out in the case on appeal upon which the first issue can be answered in the affirmative; the evidence does not sustain

18—192

the allegations of the complaint, constituting the first cause of action, either as to an agreement between plaintiff and defendant with respect to the condition, or as to the omission of such agreement from the deed as written by the draughtsman. Defendant's motion for judgment as of nonsuit should have been allowed. There was error in refusing to allow the motion.

It is needless to consider other assignments of error, based upon numerous exceptions appearing in the case on appeal. Since the trial of this action plaintiff has died; his only heir at law has been substituted as plaintiff in the action and has prosecuted this appeal. For the error in refusing to allow the motion for judgment of nonsuit, there must be a

New trial.