<hr />

THE LIFE INSURANCE COMPANY OF VIRGINIA v. A. H. EDGERTON AND W. F. TAYLOR AND ROBERT E. HENLEY, TRUSTEES.

(Filed 11 April, 1934.)

**1. Reformation of Instruments A d—Instrument may be reformed for mistake of draughtsman to make it express true intent of parties.**

Where a clause in which the grantee in a deed personally assumes payment of a prior mortgage on the lands is inserted in the deed by the mistake of the draughtsman or mutual mistake of the parties, and the mistake is not ratified by the parties and is not discovered by them until just prior to demand for payment by the mortgagee upon his discovery of the clause in the deed, equity may relieve the grantee of personal liability for the mortgage debt by reformation of the deed to make it express the true intent of the parties.

**2. Evidence J d—On issue of reformation of deed for mistake of draughtsman, parol evidence tending to establish mistake is competent.**

Parol evidence of the grantor and grantee in a deed to the effect that the parties did not contemplate that the grantee should assume personal liability in his deed for a prior mortgage on the lands, and testimony of the draughtsman that he was given no specific instruction to insert the

debt assumption clause in the deed *is held* competent upon the issue of reformation of the deed for the mistake of the draughtsman or the mutual mistake of the parties.

**3. Reformation of Instruments C d—**

The degree of proof required for the reformation of a deed for mistake of the draughtsman or the mutual mistake of the parties is clear, strong and convincing evidence.

**4. Same—Evidence in this case held sufficient to be submitted to jury on issue of reformation of deed for mistake of draughtsman.**

In a suit by a mortgagee against the mortgagor's grantee upon the debt assumption contract in the grantee's deed, the grantee set up the defense that the debt assumption clause was inserted in the deed through the mistake of the draughtsman or the mutual mistake of the parties, and introduced testimony of the grantor and grantee that they did not contemplate that the grantee should assume personal liability for the mortgage debt but that the grantee was to take the property subject to the encumbrance, and testimony of the draughtsman that he had no specific instructions to insert the debt assumption clause in the deed. On cross-examination of the grantee the mortgagee elicited testimony from the grantee that he had deducted the amount of the mortgage debt in listing his solvent credits for taxation. *Held*, the conflict in the testimony does not justify the withdrawal of the issue from the jury, the credibility of the evidence being for it to determine, and the court properly submitted the issue to the jury under instructions that the defense must be established by clear, strong and convincing evidence.

**5. Corporations K g—Transferee of corporate property immediately prior to dissolution held not liable for corporate debt under the facts.**

Plaintiff's contention that defendant taking over the property of a corporation immediately prior to its dissolution is personally liable for a mortgage indebtedness existing against the corporate realty at the time the corporation deeded same to defendant is not sustained, it appearing that plaintiff does not seek to set aside the deed to defendant but attempts to hold defendant liable thereunder, and that the corporate property taken over by defendant was of little value.

**6. Pleadings E a—**

A motion to allow an amendment of a pleading after it is filed is addressed to the sound discretion of the trial court, and no appeal lies from the court's refusal of the motion. C. S., 547.

APPEAL from *Moore, Special Judge,* and a jury, at December Special Term, 1933, of WAYNE. No error.

This is an action brought by plaintiff against the defendant, A. H. Edgerton, to recover the sum of $25,000 with interest from 19 December, 1930. The plaintiff alleges: (1) That the defendant assumed the payment of the indebtedness due it in a deed from the Professional Building Company to A. H. Edgerton. That the indebtedness be declared a lien on that certain land described in the complaint and deed, and that commissioners be appointed to sell same and apply the proceeds on the

indebtedness. (2) That a receiver be appointed to collect the rents. (3) Other and further relief. The defendant denied the indebtedness and set up mutual mistake. The plaintiff replied and later requested the court below to allow an amendment, so it could plead the three-year statute of limitation, C. S., 441(9). The amendment was denied by the court below.

The judgment in the court below is as follows: "This cause coming on to be heard at this December Special Term, 1933, of the Superior Court of said Wayne County, and being heard before his Honor, Clayton Moore, special judge presiding, and a jury, and the jury having answered the issues submitted to them as follows: '(1) Was the clause, as written in the deed from the Professional Building Corporation to the defendant Edgerton, providing for the assumption and payment of said indebtedness by the defendant inserted in said deed by the mutual mistake of the parties, or by the inadvertence and oversight of W. F. Taylor, the draughtsman of said deed, as alleged in the answer? Answer: Yes. (2) If so, did defendant learn of such mistake in October, 1926? Answer: No." It is now, therefore, in accordance with the verdict rendered, considered, ordered, adjudged, and decreed by the court that the deed executed by the Professional Building Company to A. H. Edgerton, dated 24 August, 1926, and recorded in Book 183, at page 435, in the office of the register of deeds for said Wayne County, be and the same is hereby corrected and reformed by striking and erasing from said deed, and the record thereof, that clause therein reading as follows: 'It is mutually understood and agreed that in consideration for this conveyance, the party of the second part shall and does hereby assume and agree to pay off all debts, dues, and obligations of every kind and description now outstanding against the Professional Building Company, party of the first part herein, including the indebtedness due the Life Insurance Company of Virginia above mentioned.' It is further ordered, adjudged, and decreed by the court that the said plaintiff recover no personal judgment against the defendant, A. H. Edgerton, and that the said defendant, A. H. Edgerton, recover of the plaintiff his costs of suit. And it further appearing to the court from the duly verified complaint filed herein that on 19 June, 1925, the Professional Building Company executed and delivered to the plaintiff herein its promissory note in the sum of $35,000, the balance due thereon being the sum of $25,000, all of which with interest thereon from 19 December, 1930, is now due the plaintiff, and as security to said indebtedness executed and delivered to the defendants, W. F. Taylor and Robert E. Henley, trustees, a certain deed of trust dated 19 June, 1925, which is registered in Book 175, at page 529, in the office of the register of deeds for said Wayne County, conveying the lands described in the complaint herein

and hereinafter described, and that the said W. F. Taylor and Robert E. Henley, trustees, have been duly made parties defendant herein and summons duly served upon the defendant, W. F. Taylor, trustee, on 12 December, 1930, and service thereof having been accepted by the defendant, Robert E. Henley, trustee, on 4 December, 1931, and that the said defendants, W. F. Taylor and Robert E. Henley, trustees, have filed no answer or demurrer to the complaint filed herein; and it further appearing to the court from the allegations set forth in the complaint that the plaintiff is entitled to a decree of foreclosure of the deed of trust hereinabove referred to. It is now, therefore, further considered, ordered, adjudged and decreed by the court that the land described in the deed of trust executed by the Professional Building Company to W. F. Taylor and Robert E. Henley, trustees for the Life Insurance Company of Virginia, above referred to, be and the same is hereby condemned to be sold in foreclosure of said deed of trust, after due advertisement as provided by law, at public auction, at the courthouse door in Goldsboro, N. C., and that the said Professional Building Company and all persons claiming by, through, or under it, be and they are hereby forever barred and foreclosed of all equity of redemption in and to said land and premises; it is further ordered by the court that K. C. Royall and J. Faison Thomson be and they hereby are appointed commissioners of this court to make said sale and execute title to the purchaser upon confirmation thereof by the court; that the said lands are in said deed of trust described as follows: 'A certain lot of land in the city of Goldsboro, Wayne County, adjoining the lands of First Baptist Church of Goldsboro and Best and Thompson, and bounded as follows: Beginning at a point on the west side of South John Street·190.7 feet south of the center of Walnut Street or 160 feet south of the northeast corner of Yelverton Hardware Company's store; thence with John Street southwardly 75 feet; thence westwardly parallel with Walnut Street 75 feet to a point even with the eastern wall of Best and Thompson's brick warehouse; thence northerly with the line of the warehouse wall 75 feet to an alley; thence with said alley easterly 75 feet, more or less, to John Street, the beginning corner and known in the plan of said city as part of lot No. 55, together with any interest said corporation may have to join the wall of said Best and Thompson warehouse and also all of the corporation's right and interest by reason of the covenants contained in the deed hereinafter mentioned from the First Baptist Church to H. L. Grant, wherein said church agreed that there shall forever remain vacant a space 8 feet wide fronting on John Street and running westerly 75 feet as a walkway for the joint use of H. L. Grant and his assigns and the church, and its successors and assigns. It being the same tract of land deeded to H. L. Grant by the

First Baptist Church, through its trustees, by deed dated 15 May, 1913, recorded in the office of the register of deeds for Wayne County, in Book 117, page 201, and deeded to the Grant Realty Company by H. L. Grant by deed dated 1 April, 1914, and recorded in the office of the register of deeds for Wayne County, in Book 114, page 382.'

"It is further ordered and decreed by the court that a copy of this judgment be certified to the register of deeds of said Wayne County and recorded in his office, the costs of such registration to be taxed in the bill of costs herein."

The plaintiff made many exceptions and assignments of error and appealed to the Supreme Court. The material ones and necessary facts will be set forth in the opinion.

*J. Faison Thomson, Kenneth C. Royall and Allen Langston for plaintiff, the Life Insurance Company of Virginia.*
*Dickinson & Bland and W. A. Dees for defendant, A. H. Edgerton.*

CLARKSON, J. The main question involved on this appeal: Can the grantee in a deed be held personally liable for the payment of a pre-existing debt against the property conveyed, if the assumption agreement contained in the deed was incorporated therein by mutual mistake of the parties or by inadvertence of the draughtsman, when such mistake or inadvertence was unknown to the parties until just prior to the demand for payment, and was never ratified by them? We think not.

The evidence was to the effect that the Professional Building Company, a corporation, in Goldsboro, N. C., had a large office building in said city. The building alone costing some $96,000. On 19 June, 1925, it borrowed from the plaintiff $35,000, executed its promissory note, secured by deed of trust to the defendants, W. F. Taylor and Robert E. Henley, trustees, nine payments in the sum of $2,000 each, due, respectively, one, two, three, four, five, six, seven, eight, and nine years after date; and one payment in the sum of $17,000 due ten years after date, said note containing the provision that if default be made in the payment of the principal or interest of the note, or of any installment of either, then the entire principal should become due and payable. The following is part of the note-instrument: "The undersigned hereby endorse individually the first five annual installments of this note aggregating $10,000 and the interest thereon. Mrs. W. R. Allen, A. H. Edgerton, W. R. Allen, John D. Langston."

This $10,000 was duly paid. The complaint alleges: "That the first five installments have been paid on said note, and that interest has been paid thereon up to 19 December, 1930. . . . There is due to the plaintiff by the defendant, A. H. Edgerton, the sum of $25,000 with

interest from 19 December, 1930; and that the plaintiff is entitled to a foreclosure of the deed of trust hereinabove referred to and the application of the proceeds from said sale as part payment of said judgment."

On 24 August, 1926, the Professional Building Company executed to the defendant, A. H. Edgerton, a deed for the property. In the deed was the following: "Also all money, bills receivable, notes, accounts, and other personal property of every kind and description now owned by the party of the first part herein. . . . That the same are free and clear from all encumbrances, except a deed of trust securing a loan due the Life Insurance Company of Virginia in the sum of $35,000. . . . It is mutually understood and agreed that in consideration for this conveyance, the party of the second part shall and does hereby assume and agree to pay off all debts, dues, and obligations of every kind and description now outstanding against the Professional Building Company, party of the first part herein, including the indebtedness due the Life Insurance Company of Virginia above mentioned."

The law in the present controversy is thus stated in Black on Rescission and Cancellation, Vol. 1, 2d ed., part sec. 137, pp. 136-7: "It is a well settled principle that equity may correct or reform an instrument which fails to express the true purpose and intention of the parties in consequence of mistakes made by the draftsman, whether through negligence, inadvertence, or lack of familiarity with technical terms. But cases are much more rare in which application to equity for the rescission or cancellation of instruments is made on this ground. However, there are authorities to the effect that where an instrument is executed which professes to carry into execution an agreement previously entered into, but which by mistake of the draftsman, either as to fact or law, does not accomplish the intended purpose, equity will relieve from such mistake."

The principle is thus stated in *Crawford v. Willoughby*, 192 N. C., 269 (271): "The principle that a court of equity, or a court exercising equitable jurisdiction, will decree the reformation of a deed or written instrument, from which a stipulation of the parties, with respect to some material matter, has been omitted by the mistake or inadvertence of the draughtsman, is well settled, and frequently applied. *Strickland v. Shearon*, 191 N. C., 560. The equity for the reformation of a deed or written instrument extends to the inadvertence or mistake of the draughtsman who writes the deed or instrument. If he fails to express the terms as agreed upon by the parties, the deed or instrument will be so corrected as to be brought into harmony with the true intention of the parties. *Sills v. Ford*, 171 N. C., 733. All the authorities are agreed, says *Hoke, J.,* in *King v. Hobbs*, 139 N. C., 170, that a deed or written instrument will be reformed *so as* to express the true intent of the

parties when by a mistake or inadvertence of the draughtsman, a material stipulation has been omitted from the deed or instrument as written. If the deed or written instrument fails to express the true intention of the parties, it may be reformed by a judgment or decree of the court, to the end that it shall express such intent whether the failure is due to mutual mistake of the parties, *Maxwell v. Bank,* 175 N. C., 183, to the mistake of one, and the fraud of the other party, *Potato Co. v. Jeanette,* 174 N. C., 236, or to the mistake of the draughtsman, *Pelletier v. Cooperage Co.,* 158 N. C., 405."

The testimony of grantor of his intention to exempt part of property covered in conveyance was proper. *Lee v. Charitable Brotherhood,* 191 N. C., 359. Stenographer's contradictory testimony as to instructions given for drawing deed was admissible on issue of reformation, *ibid.* Admission of mortgagor's testimony that he would not have signed mortgage, if not made subject to other mortgages, was not error. *Gray v. Mewborn,* 196 N. C., 770. The parol evidence was permissible. *Alexander v. Bank,* 201 N. C., 449. Proof of mistake authorizing correction of deed must be clear, strong, and convincing, *Lloyd v. Speight,* 195 N. C., 179. *Burton v. Insurance Co.,* 198 N. C., 498. Facts applicable to issues in suit to reform deed for mutual mistake were for the jury's determination. *Hardin v. Myers,* 197 N. C., 775. The testimony of the vice-president of the Professional Building Company, who signed the deed, was plenary and also the secretary, that the provision was placed in the deed by mistake. The vice-president testified, in part: "There was no agreement whatever made by Mr. Edgerton and by the Professional Building Company with respect to that indebtedness to the Life Insurance Company of Virginia. There was no reference to the indebtedness to the Life Insurance Company of Virginia, and no reference at any time by Mr. Edgerton or any one else as to any assumption of that indebtedness by Mr. Edgerton. I was a most astounded man when it was called to my attention in 1931. When it was called to my attention, I just blurted out, 'I will be darned.' I was absolutely astounded. Mr. Edgerton or the Professional Building Company, at no time during these negotiations, had any agreement or understanding that Mr. Edgerton was to personally assume the mortgage indebtedness that was made to the Life Insurance Company of Virginia."

The secretary testified, in part: "There was no agreement that Mr. Edgerton was to pay this note that has been exhibited here. No agreement by him that he was to pay that."

The defendant, A. H. Edgerton, testified, in part: "Q. What was your understanding and agreement as to the deed transferring the Professional Building Company to you, the real estate? Answer: The understanding in the purchase was that I was to buy their interest or their equity, and

the deed was to be made to me, subject to the mortgage of the Life Insurance Company of Virginia." He further testified that he never saw the deed assuming the liability.

The attorney who drafted the deed, connected as attorney or partner with both plaintiff and defendants, testified, in part: "I was present in the prior negotiations, but I was not present at the final. At that time, I was not a stockholder, and was not present at the final meeting of the stockholders. I drafted the deed, to which reference has been made in this suit. I drew the deed like I understood it was to be drawn. I can't say that Mr. Edgerton or any one instructed me how to draw the deed. It has been a source of great deal of regret to me. Of course, I drew the deed as I understood, and I have my own explanation as to why now. My explanation does not involve any instructions by Mr. Edgerton. The only thing that I can say is that someone simply asked me to prepare the deed for this transaction, and that I drew the deed without any definite instruction from any particular one, but drew it as I understood at that time, I thought it should be drawn. Q. Did the Professional Building Company, through its officers, give you any instructions? Answer: I can't say that anyone instructed me to put that provision in there. . . . Mr. Lewis came to Goldsboro to discuss the situation. He came to my office, and after talking about the prospect of a purchaser on any terms that could be given and discussing the question of Mr. Edgerton giving up the building, he said, 'By the way, I would like to go to the courthouse and see the deed Mr. Edgerton got this property by,' and asked me if I would go down with him. I did so. We looked up the deed and it had this provision in it, and he said to me at that time, 'Well, I don't know now what we will do about it.' . . . Q. What did you tell the life insurance company, or the representative of the life insurance company, was Mr. Edgerton's statement with regard to the clause? Answer: I stated that Mr. Edgerton stated he did not assume the indebtedness; that the provision was put in the deed without his knowledge or authority, and that he did not discover it until a few days prior to the time Mr. Lewis was here himself."

From the testimony of this witness, it would appear that Mr. Lewis, who represented plaintiff was not aware of this assumption agreement in the deed. The attempt to hold plaintiff personally for the debt was perhaps an afterthought of plaintiff, but the plaintiff's rights are set forth in *Bank v. Page, ante,* p. 18 (22): "The law undoubtedly is, that when a purchaser of mortgaged lands, by a valid and sufficient contract of assumption, agrees with the mortgagor, who is personally liable therefor, to assume and to pay off the mortgage debt, such agreement inures to the benefit of the holder of the mortgage, and upon its acceptance by him, or reliance thereon by the mortgagee, thenceforth as between them-

selves, the grantee occupies the position of principal debtor and the mortgagor that of surety, and the liability thus arising from said assumption agreement may be enforced by suit in equity, under the doctrine of subrogation, *Baber v. Hanie,* 163 N. C., 588, 80 S. E., 57, or by action at law, as upon a contract made for the benefit of a third person, *Rector v. Lyda,* 180 N. C., 577."

We think the evidence ample to be submitted to the jury. The court below charged the jury correctly several times: "The burden on the first issue is on the defendant, Mr. Edgerton, to satisfy you by evidence which is clear, strong and convincing before you can answer it 'Yes.' If he has so satisfied you, it would be your duty to answer 'Yes'; if not so satisfied, answer 'No.' "

The most serious aspect of this case is the testimony of Edgerton, on cross-examination (in part): "I did not agree to pay this thirty-five thousand dollar debt, except in so far as my endorsement was on the ten thousand dollar note with three others. I did not assume any beyond my endorsement of the ten. . . . I used this indebtedness of thirty-five thousand dollars in those years from my solvent credits as a debt due by me. I used it until 1931, when I contemplated giving up this building. . . . I had no more agreement about the debt in 1931 than in 1927, except in those years I was paying a couple of thousand dollars property tax, paid insurance, over $3,600 a year for interest and installments, and felt under these circumstances that it was entirely proper for me, contemplating to go through with it. In 1931, I changed my mind and didn't use it. As an offset against solvent credits I felt I was justified in using it. . . . There had never been any agreement on my part to pay this indebtedness to the life insurance company."

The court below on this aspect, give the plaintiff's contention to the jury as follows: "Contends that from year to year when he listed his taxes, he deducted from solvent credits all of the principal amount due, and that he only curtailed as he paid it and admitted he knew it and was taking that away from his solvent credits, and contends that you ought not to be satisfied from the evidence in this case, clear, strong and convincing, that it was a mutual mistake, and that you should answer the issue, 'No'; that he did assume it and put it in the deed, and that it remained there, and that he received all the benefits and deducted from solvent credits, that he paid and acted under that deed to dissolve the corporation, and that it was his benefit so to do, and that he received benefits from it. Plaintiff contends that you ought to answer the issue 'No.' "

We think on the whole record, this matter was properly left to the jury to determine. In *Shell v. Roseman,* 155 N. C., 90 (94): "We are not inadvertent to the fact that the plaintiff made a statement on cross-

examination as to a material matter, apparently in conflict with his evidence when examined in chief, but this affected his credibility only, and did not justify withdrawing his evidence from the jury. *Ward v. Mfg. Co.,* 123 N. C., 252." *Collett v. R. R.,* 198 N. C., 760 (762).

If plaintiff desired more specific instruction as to mutual mistake, it should have presented prayers for instruction. It is too late to complain now. The plaintiff relies mainly on *Cromwell v. Logan,* 196 N. C., 588, and cites other cases, contending that it was entitled to its peremptory instructions that on the entire record, defendant Edgerton was liable to plaintiff for the $25,000 and interest. We cannot so hold. The *Cromwell case* was one where actionable fraud was relied on to defeat the assumption agreement. The evidence in the case did not sustain actionable fraud. As to the plaintiff's contention that the conveyance to Edgerton and the dissolution of the corporation made Edgerton liable, we cannot so hold. A. H. Edgerton took the corporate property under the conveyance to him, the chose in possession and in action were practically of little value. He testified: "I took possession of the building and some rents had been accumulating that never were paid . . . I don't know of any furniture that they owned. There might have been a few dollars worth of floor oil or a little coal. Whatever the assets of the company, I took all of them." This action is not brought to set aside the conveyance to Edgerton—in fact, the plaintiff claims under it. *Cotton Mills v. Knitting Co.,* 194 N. C., 80 (87) ; C. S., 1183 and 1194.

The plaintiff has a lien on the corporate real property and seeks to subject it to the payment of its debt and also a personal judgment against the defendant, Edgerton, but the jury has found that Edgerton bought the equity of redemption and did not assume the debt due plaintiff. The plaintiff moved the court below to allow it in a reply after the original reply to Edgerton's defense, to plead the following statute of limitation : C. S., 441 : "Within 3 years an action." (9) "For relief on the ground of fraud or mistake; the cause of action shall not be deemed to have accrued until the discovery by the aggrieved party of the facts constituting the fraud or mistake." The court below refused to allow this motion. This was discretionary in the court below from which no appeal lies. C. S., 547. The many exceptions or assignments of error made by plaintiff cannot be sustained. The nature of the defense permitted parol evidence, at least none of the exceptions or assignments of error are prejudicial on this record.

The jury has found that the draughtsman of the deed, by inadvertence and oversight, made the mistake. "To err is human." In the present action, it may be noted that the plaintiff was not prejudiced by the mistake. The plaintiff corporation has a lien on property. The building

cost $96,000—outside the value of the lot. It loaned $35,000 on the property. $10,000 has been paid. It has exactly what it contracted for and will, no doubt get the property, by foreclosure, that at one time was worth perhaps four or five times the value of the loan. On the record, we find

No error.