APPLE TREE RIDGE NEIGHBORHOOD ASS'N v. GRANDFATHER MT. HEIGHTS

[206 N.C. App. 278 (2010)]

APPLE TREE RIDGE NEIGHBORHOOD ASSOCIATION, HARRY MORALES, JANICE ROBINSON, ROBERT BARBOUR, MITCHELL MURRAY AND WIFE, SHERRY J. MURRAY, AF SNELLING AND WIFE, FRANCES SNELLING, ROBIN HENDRICK AND WIFE MARIE HENDRICK, IRIS JETER, TONI CAICEDO AND MARIE SAMEK, PLAINTIFFS V. GRANDFATHER MOUNTAIN HEIGHTS PROPERTY OWNERS CORPORATION, INC., GISELE WEISMAN, HARLEY L. DAVIS, KATHRYN E. TATE, JAY MALLIN, DAVID ROBINSON AND WIFE, ESTHER ROBINSON, MARC HARRIS AND WIFE, TERRI HARRIS, WALTER I. GRAHAM AND WIFE, DENISE GRAHAM, THERESIA HAUGHER, BRUCE O. FOWLER AND WIFE, JEAN FOWLER, CHUCK STRICKLAND, HESSEL VERHAGE AND WIFE, LAURA VERHAGE, TERRY BUCHANAN, SCOTT A. WITTER AND WIFE, KAREN STOKLEY WITTER, PAUL TURNER, ALEXANDER HALLMARK, ROYALL A. YOUNT, JR., CRAIG A. MINEGAR AND WIFE, JUDITH M. MINEGAR, NANCY G. KORA, JAMES BRENNAN, JS GLASGOW, LYNDA B. CORN, RALPH O. MARSH, B. CONRAD JOHNSTON TRUST AND CHERRY B. JOHNSTON TRUST, ARTHUR WORD, AND WIFE, DOROTHY WORD, MICHAEL J. CASTANO AND WIFE, MARY W. CASTANO, THOMAS VINCENT AND WIFE, ANN VINCENT, DOUGLAS McKAY, JR., JAMES F. GODFREY, DANNY SUTCLIFFE, LARRY SUTCLIFFE, ALICE J. SCOGGINS, ROBERT H. RIGBY, CAMBRIDGE INVESTORS, INC., JOHN R. HOFFMAN, JR., QUEEN FAMILY LIMITED PARTNERSHIP, ROY A. POWELL, JR., LOUISE P. TURNER, LEE H. WITT AND WIFE, ANNABELL WITT, GUY M. TARRANT, JR., JOE C. SUMMERLIN, JR. AND WIFE, BERNICE A. SUMMERLIN, JAMES O. KINDARD, SR., AND ALBERT J. DOOLEY, SR., DEFENDANTS

No. COA09-1410

(Filed 3 August 2010)

**Compromise and Settlement— settlement agreement—subdivision access—reformation**

The trial court erred by granting plaintiffs' motion for reformation and enforcement of a settlement agreement involving access by a private road through one subdivision to a new subdivision. The changes, which were made to conform with current width and grade requirements, essentially created a new agreement and imposed upon defendant Wiesman an obligation she had not undertaken.

Appeal by defendant Gisele Weisman from order entered 12 June 2009 by Judge Dennis J. Winner in Avery County Superior Court. Heard in the Court of Appeals 11 May 2010.

*Turner Law Office, PA, by John A. Turner, for plaintiff-appellees.*

*Vetro & Lundy, P.C., by M. Shaun Lundy, for defendant-appellant Gisele Weisman.*

*Andresen & Arronte, PLLC, by Julian M. Arronte, for
defendant-appellee JS Glasgow.*

STEELMAN, Judge.

The trial court improperly granted plaintiffs' motion to reform
material terms of a voluntary settlement agreement, *i.e.* to change the
location of the right-of-way, increase the width of the right-of-way,
expand the temporary construction easements for the cut and fill
areas, and substantially increase the cost of such construction, and
then enforced the modified agreement against defendant Weisman.
The trial court's order must be reversed.

## I. Factual and Procedural Background

Apple Tree Ridge Subdivision (ATR Subdivision) was developed
in 1973 by Frank Kershaw (Kershaw) and is located on the south
slope of Grandfather Mountain in Avery County. Kershaw built and
maintained a private road within the subdivision called "Wild Apple
Drive" in order to provide access to that property from U.S. Highway
221. The deeds from Kershaw to the initial owners in ATR Subdivision
conveyed to each property owner a perpetual right-of-way and ease-
ment over the subdivision roads to U.S. Highway 221. Harry Morales,
Mitchell Murray, Bob Barbour, Janice Robinson, AF Snelling, Robin
and Marie Hendrick, and Marie Samek (collectively, plaintiffs) own
property located in ATR Subdivision and on 11 July 2007 filed a com-
plaint against Grandfather Mountain Heights Property Owners
Corporation, Inc., and Gisele Weisman (Weisman), individually.

The complaint alleged that Weisman, the developer and owner of
Grandfather Mountain Heights Subdivision[1] (GMH Subdivision) at-
tempted to use Wild Apple Drive to access GMH Subdivision from
U.S. Highway 221 and instructed the other property owners in the
subdivision to do the same. Plaintiffs alleged that no right-of-way
had been conveyed to any owner of property in GMH Subdivision.
Weisman had previously contacted Morales and informed him of
her intentions to bulldoze extensions and widen the road across his
lots to make the road suitable for GMH Subdivision as well as to
extend it to have access to land she was in the process of developing.
Morales attempted to stop Weisman from entering his property by
constructing a barrier across his lots. Weisman threatened to forcibly
remove this barrier and gave Morales a deadline of 15 July 2007 to
remove it.

---

1. Property adjoining ATR Subdivision to the east.

Plaintiffs requested a declaratory judgment confirming that Wild Apple Drive and all roads contained in ATR Subdivision were for the sole and exclusive use of the property owners located within the subdivision. Plaintiffs also requested a temporary restraining order and a preliminary injunction. Plaintiffs alleged claims for civil trespass, unfair and deceptive trade practices, and punitive damages. On 10 September 2007, Weisman and Grandfather Mountain Heights Property Owners Corporation, Inc. filed a motion to require joinder of necessary parties pursuant to Rule 19 of the North Carolina Rules of Civil Procedure. Weisman requested joinder of all property owners within ATR Subdivision and the owners of the property located south of ATR Subdivision whose title originated from D.O. Gragg, including an undeveloped area known as "Woodmont Properties."[2] Weisman's motion was granted and sixty-six parties were added as defendants. Sherry J. Murray, Frances Snelling, Iris Jeter, and Toni Caicedo were added as plaintiffs. On 13 December 2007, plaintiffs filed an amended complaint alleging claims that were virtually identical to those contained in the original complaint. Weisman filed an answer denying the material allegations of plaintiffs' amended complaint and requested that a declaratory judgment be entered confirming that defendants had the right to access their property from U.S. Highway 221 through ATR Subdivision.

On 20 October 2008, the parties attended a mediated settlement conference and reached an agreement (settlement agreement). The material terms of the settlement agreement were that the GMH Subdivision owners would obtain permanent access over Wild Apple Drive in return for executing the ATR Subdivision Road Maintenance Agreement for Wild Apple Drive. This was the only requirement set forth pertaining to GMH Subdivision in the settlement agreement. Additional terms were applicable to the Woodmont property owners: (1) the owners had to execute the ATR Subdivision Road Maintenance Agreement for Wild Apple Drive; (2) they had to accept certain restrictions[3] on the development of their property; and (3) access to Woodmont would be by a new road diverting from Wild Apple Drive "at or before" its intersection with Morales' driveway to a new right-of-way along the common boundary of the Morales and

---

2. Weisman owned both a nine and thirteen acre tract of land in Woodmont, in addition to her GMH property.

3. The agreed upon restrictions were: not more than one single-family dwelling was permitted on each of the properties; none of the properties could be subdivided or otherwise reconfigured; no street lights were to be erected on the relocated road; and the Woodmont lots were required to comply with the "Dark Sky" initiatives.

Witter properties. Woodmont property owners had to assume responsibility for the cost of constructing and maintaining the new road. The construction plan for the relocation of the road had to be approved by both Morales and Witter, and had to be constructed so as to move the least amount of earth possible. Further, the settlement agreement provided that the relocated road "shall be built in conformity with all applicable governmental regulations."

The settlement agreement was signed by plaintiffs, plaintiffs' attorney, Weisman individually and in her capacity as President of Grandfather Mountain Heights Property Owners Corporation, Inc., and defendants' attorney. While the proposed consent order and road maintenance agreement were being circulated to the parties, a number of complications arose. Plaintiffs retained Richard Clark (Clark), a grading consultant, to review the proposed right-of-way. Clark stated that the proposed new roadway would have a section of road with a proposed grade of approximately 23 percent along the existing ground. This grade did not comply with the maximum grade requirements of 13-18 percent as set forth in the "current conventional standards for new road construction." In addition, Tommy Burleson, the Director of the Avery County Planning & Inspections Department, informed the parties that the new road would have to comply with the North Carolina State Building Code:

> This "new" road would . . . have to meet the requirements of the North Carolina State Building Code: Fire Code Volume V, Chapter 5 Fire Service Features, Section 503 "Fire Apparatus Access Roads". In which, Section 503.2.1 dimensions would require a minimum of (20) twenty-feet wide, unobstructed right of way and of which would also have to meet [] maximum grade limits and maximum slope specification for the cut and fill areas.

The topography of the proposed right-of-way required an adjustment of its placement and additional temporary construction easements for cut and fill areas. Clark recommended that the proposed right-of-way be relocated 30 feet from the negotiated starting point to a narrow strip of land adjacent to both the Morales and Witter properties. To implement these recommendations, Morales, and fellow ATR Subdivision property owners Hessel and Laura Verhage, acquired the necessary land and signed a Supplemental Access Easement Agreement[4] that would facilitate the modifications.

---

4. The Supplemental Access Easement Agreement stated that the Morales, Verhages, and the Witters agreed to execute a non-exclusive supplemental access easement to "accommodate the modification of the New Right-of-Way so as to conform it

Weisman refused to sign the consent order because the construction of the road on a relocated easement would cost at a minimum an additional $40,000.00. On 5 June 2009, plaintiffs filed a motion for reformation and enforcement of the settlement agreement and requested that the trial court reform the terms of the settlement to reflect the relocation of the right-of-way as set forth in Clark's proposal and order enforcement of the agreement against Weisman. On 12 June 2009, the trial court entered an order granting plaintiffs' motion on the basis that the settlement agreement demonstrated by clear, cogent, and convincing evidence that there was "a meeting of the minds of the parties as to their intention to establish a legally sufficient right-of-way for a new road" and that the parties were acting under mutual mistake as to the legal sufficiency of the twelve-foot-wide road easement. The trial court reformed the terms of the settlement agreement to conform the new right-of-way with the maximum grade requirements and North Carolina State Building Code as articulated in Clark's proposal and set forth in the Supplemental Access Easement Agreement. The trial court ordered that the settlement agreement be enforced against Weisman, notwithstanding her objections. Weisman appeals.

## II. Reformation and Enforcement of Settlement Agreement

Weisman contends the trial court erred by granting plaintiffs' motion for reformation and enforcement of the settlement agreement. We agree.

Our Supreme Court has stated "compromise agreements, such as the mediated settlement agreement reached by the parties . . . are governed by general principles of contract law." *Chappel v. Roth,* 353 N.C. 690, 692, 548 S.E.2d 499, 500 (2001) (citation omitted). "[S]ince contract interpretation is a question of law, the standard of review on appeal is *de novo.*" *Cabarrus Cty. v. Systel Bus. Equip. Co.,* 171 N.C. App. 423, 425, 614 S.E.2d 596, 597 (citations omitted), *disc. review denied,* 360 N.C. 61, 621 S.E.2d 177 (2005).

It is a well-settled principle of contract law that in order to have "a valid and enforceable contract between parties, there must be a meeting of the minds of the contracting parties upon all essential terms and conditions of the contract." *O'Grady v. Bank,* 296 N.C. 212, 221, 250 S.E.2d 587, 594 (1978) (citations omitted). "[T]he parties

to the recommendations of the Richard Clark proposal" and to comply with the North Carolina State Building Code. The agreement also expanded the temporary construction easements for the cut and fill areas.

must assent to the same thing in the same sense, and their minds must meet as to all the terms." *Boyce v. McMahan*, 285 N.C. 730, 734, 208 S.E.2d 692, 695 (1974) (quotation omitted). Essential terms of a contract include the parties, the subject matter of the agreement, and the price to be paid under it. *Connor v. Harless*, 176 N.C. App. 402, 405, 626 S.E.2d 755, 757 (2006), *disc. review denied*, 361 N.C. 219, 642 S.E.2d 247 (2007).

Plaintiffs sought to make material alterations to the essential terms of the settlement agreement, *i.e.* change the location of the new right-of-way, increase the width of the right-of-way, expand the temporary construction easements for the cut and fill areas, and increase the cost of construction by a minimum of $40,000.00, through the equitable remedy of reformation based upon mutual mistake. "Reformation is a well-established equitable remedy used to reframe written instruments where, through mutual mistake or the unilateral mistake of one party induced by the fraud of the other, the written instrument fails to embody the parties' actual, original agreement." *Metropolitan Property & Cas. Ins. Co. v. Dillard*, 126 N.C. App. 795, 798, 487 S.E.2d 157, 159 (1997) (quotation omitted).

> To reform a contract, and then enforce it in its new shape, calls for a much greater exercise of the power of a chancellor than simply to set the transaction aside. Reformation is a much more delicate remedy than rescission. . . . *A court of equity cannot, and should not undertake to make a new contract between the parties by reformation*; it may by cancellation or rescission relieve a party from an alleged contractual obligation or liability, which he has in fact not undertaken or incurred; *it cannot, however, impose upon him a liability which he has not assumed, or an obligation which he has not undertaken.*

*Crawford v. Willoughby*, 192 N.C. 269, 272, 134 S.E. 494, 496 (1926) (citations omitted and emphasis added); *see also* 7 Joseph M. Perillo, *Corbin on Contracts* § 28.45, at 282 (revised edition 2002) ("Contracts are not reformed for mistake; writings are. The distinction is crucial. With rare exceptions, courts have been tenacious in refusing to remake a bargain entered into because of a mistake. . . . [C]ourts give effect to the expressed wills of the parties. They will not second-guess what the parties would have agreed to if they were not dealing under a mistake. Such a situation may be the basis for avoiding the contract, not reforming it.").

In the settlement agreement in the instant case, the parties specifically agreed that the relocation of the right-of-way would be as follows:

> The [right-of-way] upon the property of Harry Morales . . . shall be relocated to begin at or before the intersection of Wild Apple Drive with the Morales' driveway; the [right-of-way] shall be moved to the southeast. The centerline of the [right-of-way] shall follow the property line of Morales and Witter from the approximate mid-point of Witter's northwest line to Witter's northernmost corner. The width of the right-of-way as it crosses Morales and Witter shall be 12 feet[.]

The proposed relocation did not comply with section 503 of the North Carolina State Building Code. Plaintiffs sought to alter the language in the settlement agreement to conform to Clark's recommended modifications:

> By beginning the transition to the new right-of-way at a point along Wild Apple Drive within Lot 15A . . . about thirty feet from the negotiated beginning point, the amount of fill required to meet maximum grade requirements would be reduced by approximately two-thirds, and the resulting impacted areas within the servient properties would likewise by greatly reduced.

The primary change required a widening of the right-of-way to an unobstructed width of twenty feet. "The new construction would need room for a retaining wall and/or temporary construction easement to allow fill to be placed on the sides of the new roadway (Morales and Witter properties)." At the hearing, plaintiffs' counsel conceded that the cost of the recommended modifications would increase by a minimum of $40,000.00. Counsel argued "well, Your Honor, these Woodmont tracts as the mediated settlement agreement provides and the description of them comprise more than thirty-seven (37) acres of property. I don't think forty thousand dollars ($40,000.00) is too much of a burden in order to have the benefit." However, such a determination cannot be made by plaintiffs' counsel, but only by the parties to the settlement agreement.

Although we recognize that there was a specific provision within the settlement agreement which stated that the new roadway "shall be built in conformity with all applicable governmental regulations," we refuse to permit a trial court to use reformation to essentially create a new agreement between the parties and impose upon Wiesman

a liability which she had not assumed, or an obligation which she had not undertaken. *Crawford*, 192 N.C. at 272, 134 S.E. at 496.

Our Supreme Court has specifically stated:

[S]ettlement of claims is favored in the law and mediated settlement as a means to resolve disputes should be encouraged and afforded great deference. Nevertheless, given the consensual nature of any settlement, *a court cannot compel compliance with terms not agreed upon or expressed by the parties in the settlement agreement.*

*Chappel*, 353 N.C. at 692, 548 S.E.2d at 500 (internal citations omitted and emphasis added).

By reforming the language in the settlement agreement to reflect Clark's recommended modifications to the proposed right-of-way and enforcing the agreement against Weisman, the trial court "compel[led] compliance with terms not agreed upon or expressed by the parties in the settlement agreement." *Id.* This practice is contrary to the law of North Carolina. The trial court erred by granting plaintiffs' motion to reform and enforce the settlement agreement.

Because we hold the trial court erred by granting plaintiffs' motion for reformation and enforcement of the settlement agreement on this basis, it is not necessary to address defendant's remaining assignments of error. The order of the trial court is reversed.

REVERSED.

Judges WYNN and CALABRIA concur.