N. C. COASTAL MOTOR LINE, INC. v. EVERETTE TRUCK LINE, INC.

No. 8410SC1328

(Filed 1 October 1985)

**Carriers § 3; Sales § 17.1 — sale of ICC operating authority — rendered valueless by deregulation — no breach of warranty**

The trial court erred by denying plaintiff's motion for summary judgment and by granting summary judgment for defendant on its own motion in an action arising from the purchase by defendant of plaintiff's ICC operating authority to engage in interstate trucking operations where defendant refused to make a payment on the purchase price, plaintiff filed an action to collect the remaining purchase price, and defendant admitted all pertinent allegations of a valid contract and alleged breach of an implied and express warranty for continued value of the ICC operating authority in that deregulation of interstate trucking rendered the operating authority worthless. There was nothing in the pleadings which would give rise to an "express but implied" warranty of permanent economic value; the agreement drafted by defendant's attorney expressly limited plaintiff's warranty to no pending actions or proceedings which would affect the operating rights purchased by defendant; the agreement itself was premised on the concept that the operating rights were subject to governmental action; and defendant's pleadings and allegations regarding the existence of an oral warranty through representations by plaintiff did not establish a material issue of fact. G.S. 1A-1, Rule 56.

APPEAL by plaintiff from *Barnette, Judge.* Judgment entered 25 July 1984 in Superior Court, WAKE County. Heard in the Court of Appeals 21 August 1985.

This is a breach of contract action instituted by plaintiff 16 July 1982. On 14 September 1977, defendant, Everette Truck Line, Inc. (Everette) contracted with plaintiff, N. C. Coastal Motor Line, Inc. (Coastal) to purchase plaintiff's Interstate Commerce Commission (ICC) operating authority to engage in interstate trucking operations. The agreed purchase price was $200,000 to be paid in eight yearly installments of $25,000. Everette made payments for four years, for a total of $100,000, but refused to make the fifth payment when it became due. Coastal thereupon instituted this action.

Everette filed an answer admitting all pertinent allegations of a valid contract to purchase the ICC operating authority for $200,000 payable in eight yearly installments of $25,000. As an affirmative defense, Everette alleged justification for the nonpayment of the contract price due to breach of an implied and ex-

press warranty of continued monetary value of the ICC operating authority. Everette alleged that the deregulation of interstate trucking that occurred three years after the execution of the sales contract rendered the ICC authority worthless. Everette also filed a counterclaim for $58,000 which Everette contends represents the difference between the $100,000 Everette paid and the fair market value for the use and benefit of the ICC operating authority for the period of forty-two (42) months the ICC operating authority was of value to Everette. Coastal filed a reply denying all pertinent allegations of the counterclaim.

On 13 March 1984, Coastal filed a motion for summary judgment together with supporting affidavits. Everette filed opposing affidavits 25 June 1984. On 11 July 1984, the court: (1) denied Coastal's motion for summary judgment on its case in chief, (2) granted Coastal summary judgment on Everette's counterclaim, (3) granted Everette summary judgment on Coastal's claim. Coastal appeals.

Coastal did not include exceptions in the Record on Appeal as required by Rule 10(b)(1), N.C. Rules of Appellate Procedure. However, all assignments of error apply to the entry of summary judgment and no record was maintained. Coastal also did not state Exceptions and Assignments of Error pertaining to the questions set forth in the argument, as required by Rule 28(b)(5), N.C. Rules of Appellate Procedure. In order to prevent any injustice to Coastal, we suspend the requirements of Rules 10(b)(1) and 28(b)(5) as authorized by Rule 2, N.C. Rules of Appellate Procedure, and consider Coastal's arguments.

*William C. Stuart, III, for plaintiff appellant.*

*Bailey, Dixon, Wooten, McDonald, Fountain & Walker, by Carson Carmichael, III, for defendant appellee.*

JOHNSON, Judge.

The question we are called upon to decide is whether Everette pleaded an affirmative defense such that it was entitled to a summary judgment as a matter of law. We conclude that as a matter of law Everette was not entitled to a summary judgment.

The purpose of G.S. 1A-1, Rule 56 motion for summary judgment is to avoid a useless trial. *See, Pridgen v. Hughes,* 9 N.C.

App. 635, 177 S.E. 2d 425 (1970). The initial applications of the rule in this country were primarily actions in which debtors chose to defend rather than default. *Id.* In pertinent part G.S. 1A-1, Rule 56(c) provides:

> . . . The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law. G.S. 1A-1, Rule 56(c).

Courts have construed the design of the rule to enable claimants to penetrate unfounded defenses prior to trial. *Caldwell v. Deese,* 288 N.C. 375, 378, 218 S.E. 2d 379, 381 (1975).

Everette was granted a summary judgment upon the court's own motion. Rule 56 does not require that a party move for summary judgment in order to be entitled to it. *Greenway v. N. C. Farm Bureau Mut. Ins. Co.,* 35 N.C. App. 308, 241 S.E. 2d 339 (1978). However, the nonmovant must be entitled to the judgment as a matter of law. *A-S-P Assoc. v. City of Raleigh,* 298 N.C. 207, 258 S.E. 2d 444 (1979); Rule 56(c), N.C. Rules of Civ. P. We conclude that Everette was not entitled to summary judgment as a matter of law.

The forecast of the evidence that would have been submitted at trial as admitted by Everette was that the parties entered into a valid binding agreement which was consummated 14 September 1977. At the time of the purchase Coastal's operating rights were as warranted, and those rights were vested in Everette upon approval of the ICC. The purchase price and balance unpaid were not disputed by Everette. The agreement had a separate leasing provision pending approval by the ICC of the outright sale of Coastal's operating rights. Thus, the essential elements of Coastal's breach of contract action are met, and there is no material issue of fact with respect to those essential elements. All that remains is payment as scheduled by the agreement.

Everette admits the signing of the contract, validity of the contract, and the sale price, which are the essential terms of any instrument. Specifically, in its answer Everette admits the parties signed the contract, ". . . which to become valid or invalid upon

*whatever action* was taken in the matter of this agreement by the Interstate Commerce Commission (I.C.C.). . . ." (Emphasis added.) The epitome of Everette's contradictory argument is contained in its answer: "There was an *express but implied warranty* on the part of plaintiff that the intangible operating 'rights' and authority would be of permanent value to the defendant." (Emphasis added.) Defendant's affidavits make broad generalizations to "representations" of Coastal during negotiations which might be express warranties if they were so proven. However, the instrument drawn up by Everette expresses the parties' intent with respect to plaintiff's warranty of its operating rights. Under section nine (9) entitled, SELLER'S WARRANTIES, it states in subsection (a) "There are *no proceedings pending* which adversely affect the operating rights proposed to be transferred." (Emphasis added.) Everette now argues that government deregulations in 1980, three years after the contract was entered into, rendered plaintiff's operating rights worthless, and thus breaches an "express but implied warranty" of permanent economic value. We find nothing in the pleadings which gives rise to such an implied warranty. Defendant cites no authority for this assertion; nor do we find any case precedent in our research to support a claim of an implied warranty of permanent economic value of an intangible right. However, there are some applicable principles to interpret the parties' agreed upon warranty. "Ordinarily there can be no implied warranty of quality in the sale of personal property where there is an express warranty on the subject, and where a party sets up and relies upon a written warranty he is bound by its terms and must comply with them." *Perfecting Service Co. v. Prod. & Dev. Sales Co.*, 261 N.C. 660, 667, 136 S.E. 2d 56, 62 (1964). Everette's attorney drafted the terms of the agreement whereby Coastal's warranty was expressly limited to no *pending* actions or proceedings which would affect the operating rights purchased by Everette. The agreement itself was premised on the concept that these operating rights were subject to governmental action. Thus, Everette's allegations of implied warranty raise no issue of material fact which as a matter of law is significant with respect to any essential elements of Coastal's claims.

The parties' agreement was premised on approval by action of a governmental entity, and there was an express warranty pertaining to pending proceedings. Everette contends governmental

deregulation was not foreseeable and that there were representations by Coastal to the effect that the operating authority would retain permanent value. Everette's pleadings and affidavits regarding the existence of an oral warranty through representations by Coastal do not establish a material issue of fact. "The obligation arising upon a warranty is that of an undertaking or promise that the goods shall be as represented or, more specifically, a *contract of indemnity*, against loss by reason of defects therein." *Prod. & Dev. Sales Co.*, at 669, 136 S.E. 2d at 63. In the agreement we find a written expression of Coastal's warranty which defendant in essence is seeking to expand. "The general rule is that when a written instrument is introduced into evidence, its terms may not be contradicted by parol or extrinsic evidence, and it is presumed that all prior negotiations are merged into the written instrument." *Root v. Allstate Ins. Co.*, 272 N.C. 580, 587, 158 S.E. 2d 829, 835 (1968). In the absence of allegations of fraud, mistake, duress or ambiguous terms, which Everette did not allege, any allegations of additional warranties or variation of the written agreement would not raise any issue of material fact and would be properly excludable. *Id.*

Everette also raised lack of consideration as an affirmative defense. In light of the foregoing discussion, defendant was not entitled to a summary judgment as a matter of law. At the time of purchase Coastal's operating rights were as represented, a valuable set of rights which Everette could not have otherwise acquired. Everette is without a legal defense to Coastal's claim.

Ordinarily, we would not review the denial of plaintiff's motion for summary judgment because of the interlocutory character of a denial of a motion for summary judgment. *Motyka v. Nappier*, 9 N.C. App. 579, 176 S.E. 2d 858 (1970). In most instances the denial of a motion for summary judgment only establishes that there is a material issue of fact. However, in the case *sub judice*, we have established the law of the case in order to properly review Coastal's appeal from the court's granting Everette a summary judgment, which is a final determination on the merits of the case.

Since Coastal was the movant, it must meet a strict standard that will resolve all inferences in the nonmovant's favor. *Id.*

Everette has eased that burden by admitting in its answer the essential elements in an action on a contract.

Everette did not plead any legally recognizable defense to Coastal's claim. We agree with the court below that there was no genuine issue of material fact. We conclude that because the court below erred as a matter of law Coastal was wrongfully denied summary judgment.

The trial court correctly granted Coastal's motion for summary judgment on Everette's counterclaim. There was no basis for Everette's request to reform the contract into a leasing agreement. There were separate leasing provisions, distinct and apart from those provisions concerning the outright sale of Coastal's rights. Once the ICC approved the sale, Coastal's rights were purchased and became vested in Everette, with payment being the only performance remaining. We conclude that (1) the trial court erred by granting Everette's motion for summary judgment, (2) the trial court erred by denying Coastal's motion for summary judgment, and (3) the trial court was correct in granting Coastal's motion for summary judgment with respect to Everette's counterclaim. The case is remanded with instructions for the entry of summary judgment for Coastal.

Reversed in part, affirmed in part and remanded.

Judges EAGLES and PARKER concur.