Micro Miniature Bearing Co., Inc. v. Barnett-Sabatino, 2018 NCBC 17.

STATE OF NORTH CAROLINA

IREDELL COUNTY

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
16 CVS 1101
MASTER FILE
(related cases 16 CVS 209; 16 CVS 198)

MICRO MINIATURE BEARING CO.,
INC.,

        Plaintiff,

v.

SHAWN BARNETT-SABATINO;
VINCENT SABATINO; JOHN E.
MILLER, III; WAYNE BAUM; and
JUSTICE BEARING, LLC,

        Defendants.

SHAWN BARNETT-SABATINO,

        Plaintiff,

v.

MICRO MINIATURE BEARING CO.,
INC. d/b/a MMB BEARINGS, INC.
and CAROLYN BARNETT,

        Defendants.

VINCENT SABATINO,

        Plaintiff,

v.

MICRO MINIATURE BEARING CO.,
INC.

        Defendant.

**ORDER AND OPINION ON
DEFENDANT VINCENT SABATINO'S
MOTION FOR SUMMARY
JUDGMENT**

1. **THIS MATTER** is before the Court on Defendant Vincent Sabatino's ("Mr. Sabatino") motion for summary judgment (the "Motion") filed on May 19, 2017. Having considered the Motion, the briefs, and the arguments of counsel at a hearing held on February 5, 2018, the Court **DENIES** the Motion and **GRANTS** summary judgment in favor of Plaintiff Micro Miniature Bearing Co., Inc. for the reasons stated herein.

*Pope McMillan, P.A., by William A. Long, Jr. and Constantine H. Kutteh, II, for Plaintiff.*

*Fitzgerald Litigation, by Andrew L. Fitzgerald and D. Stuart Punger, for Defendants.*

Robinson, Judge.

## I. INTRODUCTION

2. This consolidated action arises out of a dispute between Micro Miniature Bearing Co., Inc. ("MMB") and its former employees, including Mr. Sabatino and his wife, Shawn Barnett-Sabatino ("Mrs. Barnett-Sabatino"), who was also a minority shareholder in MMB. Following the death of MMB's founder in 2015, disagreements arose between MMB and its employees and shareholders regarding MMB's operations, which eventually resulted in MMB terminating Mr. Sabatino and other employees. Thereafter, MMB and Mr. Sabatino, through their respective counsel, negotiated a possible transfer of certain domain names from Mr. Sabatino to MMB. Mr. Sabatino alleges that these negotiations resulted in a binding agreement that obligated MMB to purchase four domain names from Mr. Sabatino for a total of $16,000, but that MMB has refused to fulfil its contractual obligations. In addition

to the action filed by Mr. Sabatino, Mrs. Barnett-Sabatino brought claims against MMB in a separate action, and MMB filed an action against Mr. Sabatino, Mrs. Barnett-Sabatino, other former employee-shareholders, and a company formed by the individual Defendants. Following settlement of the claims filed by Mrs. Barnett-Sabatino and MMB, (*see* ECF Nos. 77–78), and the subsequent dismissal of those claims, (ECF No. 79), the only issue remaining for determination is whether MMB became contractually obligated to purchase from Mr. Sabatino the rights to four internet domain names for the sum of $16,000. In the Motion, Mr. Sabatino asserts that there is no genuine issue of material fact and that he is entitled, as a matter of law, to judgment in his favor finding the existence of an enforceable contract obligating MMB to pay him $16,000 for the four domain names.

## II. PROCEDURAL HISTORY

3. The Court sets forth here only those portions of the procedural history that are relevant to its determination of the Motion.

4. On January 28, 2016, Mr. Sabatino filed his Complaint against MMB in Iredell County, Civil Action No. 16 CVS 198, asserting a claim for breach of the settlement agreement (the "Sabatino action"). (Compl. 1–2, ECF No. 76 ["Sabatino Compl."].)

5. That same day, Mrs. Barnett-Sabatino filed a verified complaint in Iredell County, Civil Action No. 16 CVS 209, asserting claims individually and derivatively on behalf of MMB against Carolyn Barnett ("Mrs. Barnett") and MMB (the "Barnett-

Sabatino action").  (Mem. Law Supp. Pl.'s Mot. Summ. J. Ex. 2, ECF No. 58.2 ["Barnett-Sabatino Compl."].)

6.      On May 6, 2016, MMB filed a complaint in Iredell County, Civil Action No. 16 CVS 1101, asserting various statutory and tort claims against Defendants Mrs. Barnett-Sabatino, Mr. Sabatino, John E. Miller, III ("Mr. Miller"), Wayne Baum, and Justice Bearing, LLC (the "MMB action").  (Compl. 5, 8, 10–11, ECF No. 1 ["MMB Compl."].)

7.      The MMB action was designated as a mandatory complex business case by order of the Chief Justice of the Supreme Court of North Carolina dated June 14, 2016, (ECF No. 4), and was assigned to the undersigned by order dated July 6, 2016, (ECF Nos. 5, 7).

8.      On September 20, 2016, the Court entered an order consolidating the separate actions.  (ECF Nos. 16, 35.)

9.      On May 19, 2017, Mr. Sabatino filed the Motion, supporting affidavits, excerpts from Mrs. Barnett's deposition testimony, and a brief in support.  (ECF Nos. 37–38.)

10.      The Barnett-Sabatino and MMB actions have been resolved by a settlement agreement reached by the parties and approved by the Court on February 6, 2018, (ECF No. 77), and those claims have been dismissed, (ECF No. 79).  Thus, the only claim left for resolution is Mr. Sabatino's contract claim.

11.      The Motion has been fully briefed and is now ripe for resolution.

## III. FACTUAL BACKGROUND

12. The Court does not make findings of fact when ruling on a motion for summary judgment. The following background, drawn from the record and the evidence submitted in support of and in opposition to the Motion, is intended to provide context for the Court's analysis and ruling and is solely for purposes of this Order and Opinion.

### A. Parties Relevant to the Sabatino Action

13. MMB is a New Jersey corporation with its corporate offices in Mooresville, North Carolina. (MMB Compl. ¶ 11; Answer ¶ 11, ECF No. 3.)

14. Mr. Barnett's wife, Mrs. Barnett, has been involved in MMB's operations since the company's founding. (MMB Compl. ¶ 13; Answer ¶ 13.)

15. Mrs. Barnett-Sabatino, who is Mr. Barnett's daughter and Mrs. Barnett's step-daughter, began working for MMB in the early 1990's. (MMB Compl. ¶¶ 14–15; Answer ¶¶ 14–15.)

16. Mr. Sabatino is Mrs. Barnett-Sabatino's husband, who also worked for MMB providing information technology services. (MMB Compl. ¶¶ 19–20; Answer ¶¶ 19–20.)

### B. MMB's Operations After Mr. Barnett's Death

17. After Mr. Barnett's death in May 2015, Mrs. Barnett became the sole director of MMB. (*See* MMB Compl. ¶¶ 12–13; Answer ¶¶ 12–13.) A dispute over MMB's operations arose between Mrs. Barnett, on the one hand, and Mrs. Barnett-Sabatino, Mr. Sabatino, and other employee-shareholders of MMB, on the other hand,

the facts of which are contested by the parties in ways not relevant to the Motion. (*See* MMB Compl. ¶¶ 27–29; Answer ¶¶ 27–29; Barnett-Sabatino Compl. ¶¶ 18–25.)

18.     Around July 31, 2015, MMB terminated Mr. Sabatino's employment. (MMB Compl. ¶ 24; Answer ¶ 24.)   MMB placed Mrs. Barnett-Sabatino on administrative leave on September 10, 2015, (MMB Compl. ¶ 34; Answer ¶ 34), and later terminated her employment on November 6, 2015, (MMB Compl. ¶ 18; Barnett-Sabatino Compl. ¶ 25).

19.     In its complaint, MMB alleges that, incident to Mr. Sabatino's termination, he agreed to transfer control of four domain names to MMB, but has failed to do so. (MMB Compl. ¶¶ 55–56.)  Mr. Sabatino denies these allegations.  (Answer ¶¶ 55–56.)

C.     **Negotiations Between Mr. Sabatino and MMB**

20.     In late 2015, Mr. Sabatino and Mrs. Barnett-Sabatino's counsel, Andrew Fitzgerald ("Mr. Fitzgerald"), and MMB's counsel, Lisa Valdez ("Ms. Valdez"), discussed by e-mail the terms of a possible settlement agreement that would resolve the domain name dispute between Mr. Sabatino and MMB along with other disputes between MMB, on the one hand, and Mr. Sabatino and Mrs. Barnett-Sabatino, on the other.  (*See* Barnett-Sabatino Compl. ¶ 41; Sabatino Compl. ¶ 4, Ex. 1.)

21.     On December 11, 2015, Ms. Valdez e-mailed Mr. Fitzgerald ("Ms. Valdez's First E-mail") stating, in relevant part:

> Our client has authorized us to offer $12,500 for the purchase of the domain name . . . . This price includes and/or assumes a few conditions . . . . The purchase price will be held in trust by our firm until the following can be satisfied:

1. [MMB] will need to verify that the domain, all rights, passwords, and associated information has been transferred and assigned to it. By domain, this includes [the four domain names at issue], which we believe are all registered to your clients. Further [MMB] must verify the domain name is secure and all possibilities of the email communication using the domain are secure and can no longer be intercepted. This verification may be done by a third party agreed upon by both our clients and the cost shared.

2. It appears that Mrs. [Barnett-]Sabatino remotely dialed into her computer at MMB and deleted numerous MMB files, programs, and copied the same. . . . We expect these items returned immediately, but in consideration of the purchase price paid above, everything Mrs. [Barnett-]Sabatino deleted and/or copied – all electronic files, programs, proprietary information and any hard files she removed from the property – must be returned.

(Def. Vincent Sabatino's Mot. Summ. J. Ex. to Ex. 2, at 7–8, ECF No. 37.3 ["E-mail Exchange"].) Ms. Valdez further requested that Mrs. Barnett-Sabatino or Mr. Miller provide MMB with information on how to correct a recurring problem with MMB's e-mail system and that Mr. Sabatino return a key fob to MMB. (E-mail Exchange 8.) Ms. Valdez also stated that MMB was working to resolve a vacation pay matter previously raised by Mr. Fitzgerald. (E-mail Exchange 8.)

22. On December 15, 2015, Mr. Fitzgerald responded ("Mr. Fitzgerald's First E-mail") stating:

> My client counters at $20,000. MMB would receive the mmbearings.com domain plus the others you mentioned . . . . Once transferred [Mr. Sabatino's company] won't have access to the domain name, hosting, or email address administration. . . . We're not going to pay to have someone verify that [Mr. Sabatino's company] transferred everything. . . . My understanding is that [MMB's] new administrator would be able to see with ease that [Mr. Sabatino's company] was out of the picture once the transfer takes place. . . .

> We do not know what you are referring to regarding [Mrs. Barnett-Sabatino] supposedly accessing files, etc. You'll have to provide specifics for us to respond.

(E-mail Exchange 6–7.) Mr. Fitzgerald further stated that he believed that the recurring e-mail problem would become moot after Mr. Sabatino transferred the domain names. (E-mail Exchange 7.) As to the fob issue, Mr. Fitzgerald requested that MMB "drop it" since the device was "deactivated and useless[,]" but said he would ask Mr. Sabatino to return it. (E-mail Exchange 7.) Mr. Fitzgerald stated that the vacation pay issue needed to be resolved quickly and raised two new issues: (1) an earlier promise that his clients would receive "$500 for a server shelf and some desk cabinets[,]" and (2) Mrs. Barnett-Sabatino's dispute with MMB. (E-mail Exchange 7.)

23. On December 18, 2015, Ms. Valdez responded to Mr. Fitzgerald's First E-mail ("Ms. Valdez's Second E-mail") and provided information regarding the removal or deletion of MMB's property, stating "[h]opefully this is enough information for your client to now respond." (E-mail Exchange 5–6.) Specifically, Ms. Valdez stated that MMB's security records showed that on the morning that all files were deleted from Mrs. Barnett-Sabatino's computer, which was around the time that she was placed on administrative leave, Mrs. Barnett-Sabatino came into the office early but left before other employees arrived. (E-mail Exchange 6.) As to other remaining issues, Ms. Valdez responded that (1) she would ask her client to drop the fob issue, (2) the vacation pay should have been deposited that day, and (3) MMB would agree to pay $500 for the server shelf and cabinets. (E-mail Exchange 6.) Ms. Valdez concluded

by saying, "Please let us know your clients' response to the deletion of the files as soon as possible as it is imperative to the company's operations."  (E-mail Exchange 6.) Ms. Valdez did not change her client's offer regarding the amount MMB would pay Mr. Sabatino for the four domains.

24.    On December 18, 2015, Mr. Fitzgerald responded ("Mr. Fitzgerald's Second E-mail") stating that his "clients deny having a role in the wiping, etc. [that you] described . . . . [M]y clients seem adamant that they are not a part of any type of activities you discussed[.]"  (E-mail Exchange 5.)  Mr. Fitzgerald further stated that he had "been authorized to counter at $18000 [sic], which includes the domain and the cabinet[.]"  (E-mail Exchange 5.)

25.    On December 21, 2015, Ms. Valdez responded in a third e-mail to Mr. Fitzgerald's denial that Mrs. Barnett-Sabatino took or deleted MMB's property ("Ms. Valdez's Third E-mail") by stating that "[w]e must have either a misunderstanding or a mystery[,]" and noting that MMB's records showed that on the morning that the files were deleted, Mrs. Barnett-Sabatino arrived at MMB's office just after 7:00 a.m. and left before other employees arrived.  (E-mail Exchange 4.)  Ms. Valdez's Third E-mail also stated that she was "authorized to increase [her] client's counter offer [sic] . . . to $16,000.  Hopefully this is agreeable with your clients and maybe we can get this resolved before Christmas."  (E-mail Exchange 4.)

26.    Mr. Fitzgerald replied that same day ("Mr. Fitzgerald's Third E-mail"), addressing details of when Mrs. Barnett-Sabatino was placed on leave and stating "[w]e will accept $16,00 [sic] for the domain and the cabinet.  Do you want to draw a

release or agreement of some type?  I'm not sure what it would look like but I want your client to be protected and satisfied with what they're [sic] paying for."  (E-mail Exchange 4.)  Ms. Valdez promptly replied ("Ms. Valdez's Fourth E-mail") that she would "draft an agreement and send it to [Mr. Fitzgerald] for review."  (E-mail Exchange 4.)

27.   On January 7, 2016, Mr. Fitzgerald e-mailed Ms. Valdez ("Mr. Fitzgerald's Fourth E-mail") requesting an update on the draft agreement.  (E-mail Exchange 1.)  Ms. Valdez responded the next day ("Ms. Valdez's Fifth E-mail"), stating that she "had some difficulty getting [her] clients [sic] back in the game, so to speak," because of disagreements that arose over the holidays between Mr. Sabatino and Mrs. Barnett and because of MMB's "continued belief that [it has] already paid for the domain at the time it was registered at [Mr.] Barnett's request[.]"  (E-mail Exchange 1–2.)  Ms. Valdez's Fifth E-mail again reiterated the basis for MMB's belief that Mrs. Barnett-Sabatino took or deleted MMB's property and stated that MMB's current position was to insist that Mrs. Barnett-Sabatino return the electronic files, the computer (if she took the computer), a company logo, and all hard copies of documents she took from the office.  (E-mail Exchange 1.)

28.   Thereafter, negotiations between the parties broke down, and these actions ensued.

**D.   Mr. Sabatino's Claim**

29.   Mr. Sabatino asserts a claim for breach of contract, alleging that MMB agreed to purchase the four domain names for $16,000 and Mr. Sabatino is ready and

willing to perform his contractual obligation, but MMB has refused to pay him in violation of the contract.  (Sabatino Compl. ¶¶ 3–4, 7.)

## IV.    LEGAL STANDARD

30.    Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to judgment as a matter of law." N.C. Gen. Stat. § 1A-1, Rule 56(c).  "A genuine issue of material fact is one that can be maintained by substantial evidence.  Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion and means more than a scintilla or a permissible inference." *Ussery v. Branch Banking & Tr. Co.*, 368 N.C. 325, 335, 777 S.E.2d 272, 278–79 (2015) (citations and quotation marks omitted).

31.    The moving party bears the burden of showing that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. *Hensley v. Nat'l Freight Transp., Inc.*, 193 N.C. App. 561, 563, 668 S.E.2d 349, 351 (2008).  The movant may make the required showing by proving that "an essential element of the opposing party's claim does not exist, cannot be proven at trial, or would be barred by an affirmative defense, or by showing through discovery that the opposing party cannot produce evidence to support an essential element of her claim." *Dobson v. Harris*, 352 N.C. 77, 83, 530 S.E.2d 829, 835 (2000).

32.    "Once the party seeking summary judgment makes the required showing, the burden shifts to the nonmoving party to produce a forecast of evidence

demonstrating specific facts, as opposed to allegations, showing that he can at least establish a *prima facie* case at trial." *Gaunt v. Pittaway*, 139 N.C. App. 778, 784–85, 534 S.E.2d 660, 664 (2000). The Court must view the evidence in the light most favorable to the non-movant. *Dobson*, 352 N.C. at 83, 530 S.E.2d at 835. However, the non-movant "may not rest upon the mere allegations or denials of [its] pleading, but [its] response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If [the non-movant] do[es] not so respond, summary judgment, if appropriate, shall be entered against [the non-movant]." N.C. Gen. Stat. § 1A-1, Rule 56(e).

33.     "Rule 56 does not require that a party move for summary judgment in order to be entitled to it. However, the nonmovant must be entitled to the judgment as a matter of law." *N.C. Coastal Motor Line, Inc. v. Everette Truck Line, Inc.*, 77 N.C. App. 149, 151, 334 S.E.2d 499, 501 (1985) (citation omitted). Thus, under Rule 56(c), a court may grant summary judgment to the non-moving party where there is no genuine issue of material fact and the non-moving party is entitled to judgment as a matter of law. N.C. Gen. Stat. § 1A-1, Rule 56(c); *Elliott v. Enka-Candler Fire & Rescue Dep't*, 213 N.C. App. 160, 170, 713 S.E.2d 132, 139 (2011).

## V.     ANALYSIS

34.     The Court initially notes that the materials relied upon by MMB and Mr. Sabatino are documents that generally are not considered by a court in ruling on a motion for summary judgment. *Baker v. Bowden*, 2017 NCBC LEXIS 31, at *7 (N.C. Super. Ct. Apr. 3, 2017). "On a motion for summary judgment the court may consider

evidence consisting of affidavits, depositions, answers to interrogatories, admissions, documentary materials, facts which are subject to judicial notice and any other materials which would be admissible in evidence at trial." *Huss v. Huss*, 31 N.C. App. 463, 466, 230 S.E.2d 159, 161–62 (1976). However, neither party has challenged the propriety of the Court's consideration of the e-mail chain submitted by the parties and, in fact, both Mr. Sabatino and MMB filed a copy of the e-mail chain in support of and in opposition to the Motion. (Def.'s Mot. Summ. J. Ex. to Ex. 2; Resp. & Mem. Law Opp'n Def. Vincent Sabatino's Mot. Summ. J. Ex. to Ex. 3, ECF No. 47.2.) Further, the parties acknowledged during the hearing on the Motion that they relied on no evidence other than that submitted in support of and opposition to the Motion and, if the case were tried, they would have no other evidence to present regarding the existence of an agreement for purchase and sale of the domains. Accordingly, the Court will consider the e-mail chain submitted by the parties in ruling on the Motion. *See E-B Grain Co. v. Denton*, 73 N.C. App. 14, 20, 325 S.E.2d 522, 526 (1985) ("[A]s is true of other material introduced on a summary judgment motion, uncertified or otherwise inadmissible documents may be considered by the court if not challenged by means of a timely objection." (alteration in original)).

35. "A compromise and settlement agreement terminating or purporting to terminate a controversy is a contract, to be interpreted and tested by established rules relating to contracts." *Harris v. Ray Johnson Constr. Co.*, 139 N.C. App. 827, 829, 534 S.E.2d 653, 654 (2000). A valid contract requires mutual assent, mutuality of obligation, and definite terms. *Charlotte Motor Speedway, LLC v. Cty. of Cabarrus*,

230 N.C. App. 1, 7, 748 S.E.2d 171, 176 (2013). "It is axiomatic that a valid contract between two parties can only exist when the parties assent to the same thing in the same sense, and their minds meet as to all terms." *Normile v. Miller*, 313 N.C. 98, 103, 326 S.E.2d 11, 15 (1985) (quotation marks omitted); *Apple Tree Ridge Neighborhood Ass'n v. Grandfather Mountain Heights Prop. Owners Corp.*, 206 N.C. App. 278, 282, 697 S.E.2d 468, 472 (2010) ("[T]here must be a meeting of the minds of the contracting parties upon all essential terms and conditions of the contract."). "If any portion of the proposed terms is not settled, or no mode agreed on by which they may be settled, there is no agreement." *Chappell v. Roth*, 353 N.C. 690, 692, 548 S.E.2d 499, 500 (2001).

36. "In the formation of a contract an offer and an acceptance are essential elements; they constitute the agreement of the parties. The offer must be communicated, must be complete, and must be accepted in its exact terms." *Washington v. Traffic Markings, Inc.*, 182 N.C. App. 691, 697, 643 S.E.2d 44, 48 (2007). "[T]he offer must be one which is intended of itself to create legal relations on acceptance." *Yeager v. Dobbins*, 252 N.C. 824, 828, 114 S.E.2d 820, 823 (1960). If the acceptance alters or adds terms, "there is no meeting of the minds and, consequently, no contract." *Normile*, 313 N.C. at 103, 326 S.E.2d at 15. Stated differently, a party cannot seek enforcement of one essential or material term when it has not agreed to other essential or material terms. *Quantum Corp. Funding, Ltd. v. B.H. Bryan Bldg. Co.*, 175 N.C. App. 483, 490, 623 S.E.2d 793, 799 (2006).

37.   Notwithstanding the preference for settlement of claims without judicial intervention, "given the consensual nature of any settlement, a court cannot compel compliance with terms not agreed upon[.]" *Chappell*, 353 N.C. at 692, 548 S.E.2d at 500.  Thus, "[s]ummary judgment in favor of the [party opposing enforcement of the contract] is properly entered when the evidentiary forecast discloses that the parties never reached a mutual understanding or meeting of the minds as to the essential terms of the contract." *Elliott v. Duke Univ., Inc.*, 66 N.C. App. 590, 596, 311 S.E.2d 632, 636 (1984).

38.   Mr. Sabatino argues that he is entitled to summary judgment because there are no genuine issues of material fact, and the e-mails create a clear, unambiguous agreement that left nothing conditional or uncertain.  (Def.'s Mot. Summ. J. 1.)  Mr. Sabatino contends that Ms. Valdez's Third E-mail constituted an offer by MMB to pay $16,000 for the domain names, which was accepted on Mr. Sabatino's behalf by Mr. Fitzgerald's Third E-mail.  (Def.'s Br. Supp. 3–5.)  Mr. Sabatino argues that, by that point, Mrs. Barnett-Sabatino's alleged taking of MMB's property was no longer an outstanding term of the agreement because Mr. Fitzgerald's previous e-mail denied that his clients took MMB's property and was, thus, a rejection of Ms. Valdez's offer on that issue.  (Def.'s Br. Supp. 3.)  According to Mr. Sabatino, Ms. Valdez's continued references to the facts surrounding Mrs. Barnett-Sabatino's alleged taking of property were not renewed offers; rather, Ms. Valdez was merely "talking negatively about Mr. Fitzgerald's position" on the issue.  (Def.'s Br. Supp. 3.)  As evidence that MMB agreed to buy the domain names without resolution of the return

of property issue, Mr. Sabatino points to the fact that after the purported offer and acceptance, Ms. Valdez's subsequent e-mails did not raise the issue of Mrs. Barnett-Sabatino's return of property again until several weeks later, and only upon being asked for an update on the draft agreement. (Def.'s Br. Supp. 5–6.) Mr. Sabatino further argues that Ms. Valdez's Fifth E-mail, stating that she was having difficulty getting her client "back in the game" and that her client's "current position" was to demand the return of MMB's property, (E-mail Exchange 1), demonstrates that MMB had agreed to the exchange of the domains for $16,000, but was then attempting to disavow that agreement, (Def.'s Br. Supp. 4). Mr. Sabatino also submits as evidence his own affidavit in which he testified that "[i]n December 2015, it was my understanding, from my attorneys, that a settlement agreement was reached whereby I would receive $16,000 in exchange for me transferring 4 domains to MMB." (Def.'s Mot. Summ. J. Ex. 1, ¶ 5, ECF No. 37.1 ["Sabatino Aff."].)

39. Conversely, MMB contends that a binding contract was never formed because the parties did not reach agreement on Mrs. Barnett-Sabatino's return of MMB property, which was a necessary condition for contract formation. (Resp. Mem. Law Opp'n Def. Vincent Sabatino's Mot. Summ. J. 7–9, ECF No. 47.4 ["Pl.'s Br. Opp'n"].) MMB argues that the purported offer and acceptance resolved only the issue of price for the domain names, but that Mrs. Barnett-Sabatino's return of property remained an outstanding and material term. (Pl.'s Br. Opp'n 8–10; *see also* E-mail Exchange 1, 4, 6–8.) As evidence of its position, MMB points to Ms. Valdez's First E-mail wherein she made clear that MMB's offer on the price for the domain

names was conditioned upon and part of the consideration for the return of MMB's property. (Pl.'s Br. Opp'n 7–8.) MMB also offers Ms. Valdez's affidavit in which she avers that "[e]ach and every counter-offer [sic] I relayed to [Mr.] Fitzgerald . . . relied upon the inclusion of a condition as to the return of certain MMB company property" as described in Ms. Valdez's First E-mail. (Pl.'s Br. Opp'n Ex. 3, ¶ 6, ECF No. 47.2 ["Valdez Aff."].) Ms. Valdez further testified that "it was made clear throughout [her] email communications that [her] client demanded return of the MMB property[.]" (Valdez Aff. ¶ 8.)

40. The Court has before it the entire e-mail exchange from which a contract was allegedly formed, (*see* E-mail Exchange 1–8), and concludes that there are no genuine issues of material fact as to whether an agreement was formed.

41. Upon careful review of counsel's negotiations via e-mail, the Court concludes that Mrs. Barnett-Sabatino's return of property was a material term of any proposed settlement agreement. Ms. Valdez's First E-mail stated that "*in consideration of the purchase price . . .* , everything Mrs. [Barnett-]Sabatino deleted and/or copied . . . must be returned." (E-mail Exchange 8 (emphasis added).) Where a term or condition of the agreement is part of the consideration, it is material to the agreement. *See Chappell*, 353 N.C. at 693–94, 548 S.E.2d at 500 ("The mutually agreeable release was part of the consideration, and hence, material to the settlement agreement." (quotation marks omitted)). As Mrs. Barnett-Sabatino returning certain MMB property was part of the consideration for MMB's agreement to purchase the

domain names, the Court concludes that such return of property was material to any settlement agreement.

42.     Having concluded that Mrs. Barnett-Sabatino's return of property was a material term, the Court must next determine whether counsel's e-mail exchange demonstrates mutual assent as to that term. "The heart of a contract is the intention of the parties, which is ascertained by the subject matter of the contract, the language used, the purpose sought, and the situation of the parties at the time." *Pike v. Wachovia Bank & Tr. Co.*, 274 N.C. 1, 11, 161 S.E.2d 453, 462 (1968). "When a contract is in writing and free from any ambiguity which would require resort to extrinsic evidence, or the consideration of a disputed fact, the intention of the parties is a question of law." *Lane v. Scarborough*, 284 N.C. 407, 410, 200 S.E.2d 622, 624 (1973).

43.     Notwithstanding Mr. Sabatino's argument that Mrs. Barnett-Sabatino's return of property was no longer an outstanding issue after Mr. Fitzgerald denied that his clients removed or deleted MMB's property, Ms. Valdez and Mr. Fitzgerald continued to discuss the taking or deletion of MMB property in subsequent e-mails. (*See* E-mail Exchange 1, 4.) In response to Ms. Valdez's initial demand that Mrs. Barnett-Sabatino return MMB's property, Mr. Fitzgerald requested more information so that his clients could respond to the allegations. (E-mail Exchange 7.) After Ms. Valdez's Second E-mail provided the requested information, Mr. Fitzgerald stated that his clients denied taking or removing the property in question. (E-mail Exchange 5–6.) Ms. Valdez's Third E-mail responded to Mr. Fitzgerald's denial by

stating that "[w]e must have either a misunderstanding or a mystery" and providing details regarding MMB's belief that Mrs. Barnett-Sabatino removed or deleted MMB's property. (E-mail Exchange 4.) The purported acceptance in Mr. Fitzgerald's Third E-mail also continued to discuss MMB's basis for believing that Mrs. Barnett-Sabatino removed or deleted the property. (E-mail Exchange 4.) Thus, the very communications that Mr. Sabatino alleges to be the offer and acceptance that created a contract demonstrate that a material term was unresolved when the contract was allegedly formed. Additionally, Ms. Valdez clearly communicated from the outset that MMB was unwilling to go forward with a settlement without the return of MMB's property. (*See* E-mail Exchange 4, 6–8.) Thus, Ms. Valdez's offer on the price for the domain names and Mr. Fitzgerald's acceptance of the same does not, based on any reasonable interpretation of the parties' words and acts, indicate that the parties assented to the same thing in the same sense. *See Ray Lackey Enters., Inc. v. Vill. Inn Lakeside, Inc.*, 2016 NCBC LEXIS 9, at *16–19 (N.C. Super. Ct. Jan. 29, 2016). Mr. Sabatino cannot now seek to enforce one material term, payment for the domain names, when an agreement has not been reached on another material term, the return of MMB's property.

44. The Court concludes that there is no genuine issue of material fact that material terms remained unsettled, thus precluding the existence of a valid binding contract. Therefore, entry of judgment as a matter of law in MMB's favor is proper.

45. Alternatively, assuming *arguendo* that the parties reached a binding settlement agreement, the Court concludes that Mrs. Barnett-Sabatino's return of property was a condition precedent that has not been satisfied.

46. "A condition precedent is a fact or event, occurring subsequently to the making of a valid contract, that must exist or occur before there is a right to immediate performance, before there is a breach of contract duty, before the usual judicial remedies are available." *Chem. Realty Corp. v. Home Fed. Sav. & Loan Ass'n of Hollywood*, 84 N.C. App. 27, 37, 351 S.E.2d 786, 792 (1987) (quotation marks omitted). "Where parties enter a contract containing a condition precedent, they are bound when the condition is satisfied. A condition precedent is an event which must occur before a contractual right arises . . . ." *Powell v. City of Newton*, 364 N.C. 562, 566, 703 S.E.2d 723, 727 (2010) (citations and quotation marks omitted). "Breach or non-occurrence of a condition prevents the promisee from acquiring a right, or deprives him of one, but subjects him to no liability." *In re Foreclosure of Goforth Props.*, 334 N.C. 369, 375, 432 S.E.2d 855, 859 (1993). "In general, a condition creates no right or duty but is merely a limiting or modifying factor in a contract." *Id.* Conditions precedent are disfavored by the law and, as such, a contract provision will not be construed as a condition precedent absent clear language requiring such a construction. *Mosley v. WAM, Inc.*, 167 N.C. App. 594, 600, 606 S.E.2d 140, 144 (2004). "[T]he use of such words as 'when,' 'after,' 'as soon as,' and the like, gives clear indication that a promise is not to be performed except upon the happening of a stated event." *In re Foreclosure of Goforth Props.*, 344 N.C. at 376, 432 S.E.2d at 859.

47.    Upon review of Ms. Valdez's First E-mail, the initial offer made clear that the return of MMB property was a necessary condition that had to occur before MMB became obligated to pay Mr. Sabatino for the domain names.  The initial offer in Ms. Valdez's First E-mail explicitly stated that the purchase price "includes and/or assumes a few conditions," which conditions included the return of MMB's property, and that "[t]he purchase price w[ould] be held in trust by our firm *until*" the stated conditions were met.  (E-mail Exchange 8 (emphasis added).)  These statements expressed MMB's clear intent that any payment to Mr. Sabatino for the domain names was contingent on the return of MMB's property.  *See In re Foreclosure of Goforth Props.*, 344 N.C. at 376, 432 S.E.2d at 859.

## VI.    CONCLUSION

48.    For the foregoing reasons, the Court **DENIES** the Motion and **GRANTS** summary judgment in favor of MMB.

**SO ORDERED**, this the 21st day of February, 2018.


/s/ Michael L. Robinson
_____
Michael L. Robinson
Special Superior Court Judge
   for Complex Business Cases