IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA18-132

Filed: 18 September 2018

Dare County, No. 13 CVS 339

NATIONSTAR MORTGAGE, LLC, Plaintiff,

v.

CLARENCE E. DEAN, JR. and KELLY ANN DEAN, and WELLS FARGO BANK, N.A., Defendants.

Appeal by defendants from order and judgment entered 8 September 2017 by Judge Marvin K. Blount, III in Dare County Superior Court. Heard in the Court of Appeals 23 August 2018.

> *Burr & Forman, LLP, by William J. Long, Matthew W. Barnes and E. Travis Ramey, pro hac vice, for plaintiff-appellee.*

> *Hornthal, Riley, Ellis & Maland, LLP, by M.H. Hood Ellis, for defendant-appellants.*

TYSON, Judge.

Clarence E. Dean, Jr. and Kelly Ann Dean appeal from the trial court's order, which granted Nationstar Mortgage, LLC's ("Nationstar") motion for summary judgment on Nationstar's declaratory judgment claim, and alternatively granted Nationstar's claim to reform a deed of trust. We affirm.

## I. Background

In 2003, Clarence E. Dean, Jr. and his brother-in-law, Jerry Shanahan, formed a limited partnership, 505 N Virginia Dare, L.P. Mr. Dean and Mr. Shanahan purchased the Tanglewood Motel located at the address of 505 N. Virginia Dare Trail, Kill Devil Hills, N.C. and took title in the name of their limited partnership. After operating the Tanglewood Motel for a rental season, Mr. Dean and Mr. Shanahan demolished the motel and built two large beach cottages with financing acquired from First South Bank.

Approximately a year later, 505 N Virginia Dare, L.P. subdivided and conveyed one cottage and lot to Mr. Shanahan and the other cottage and lot to Mr. Dean ("the Property"). The subdivided property's previous address of 505 N. Virginia Dare Trail remained with the lot conveyed to Mr. Shanahan. The Property conveyed to Mr. Dean carried the street address of 507 N. Virginia Dare Trail, Kill Devil Hills, N.C. 27948-7828.

In June 2004, Mr. Dean and his wife, Kelly Ann Dean (collectively "the Deans"), pledged the Property as collateral to secure a $1,820,000 loan from First South Bank. The Deans retained an attorney, Charles D. Evans, to prepare a deed of trust and close the loan, and granted him a power of attorney to execute and record the loan documents on their behalf. The property description in the deed of trust stated "See Attached Exhibit A" and stated the property has the address of "**507 N VIRGINIA DARE TRAIL**, **KILL DEVIL HILLS**, North Carolina **27948-7828**

("Property Address")." (Emphasis original). Mr. Evans recorded the deed of trust ("First South Deed of Trust" or "Original Deed of Trust) on 1 June 2004 with the Dare County Register of Deeds, but failed to include "Exhibit A." Exhibit A contained the platted lot and block number of the Property. On 16 November 2004, First South Bank sent a letter to Mr. Evans advising him "The Deed of Trust was not recorded with the legal description. Please [add] the legal description and re-record the Deed of Trust."

Mr. Evans re-recorded the First South Deed of Trust on 24 November 2004 without the Deans' knowledge and attached Exhibit A. Mr. Evans noted the following on the first page of the re-recorded First South Deed of Trust:

This deed of trust is being re-recorded to add the Exhibit "A" which was omitted

s/ Charles D. Evans
Charles D. Evans, Attorney
11/22/04

On 27 October 2004, the Deans granted a deed of trust ("Wachovia Deed of Trust") to Wachovia Bank, N.A in the amount of $500,000, which was recorded with the Dare County Register of Deeds on 18 November 2004. The Deans allegedly granted Wachovia this deed of trust in exchange for a second-position lien on the Property. Wells Fargo Bank, N.A. ("Wells Fargo") later became the owner and holder of the Wachovia Deed of Trust.

In 2011, the Deans missed a payment on their loan with First South Bank. Aurora Bank FSB ("Aurora"), Nationstar's predecessor-in-interest, was servicing the Deans' loan at the time. The Deans asserted an employee of Aurora contacted them and advised them to miss another payment, so that "Aurora could work with [the Deans] and make some accommodation[.]" The Deans intentionally missed another payment and Aurora purportedly orally agreed to enter into a forbearance agreement.

Aurora mailed the Deans a proposed "Special Forbearance Agreement" with an attached cover letter. The cover letter instructed the Deans to:

> Please execute the attached Special Forbearance Agreement and return it along with . . . . your initial payment in the amount of $14240.24. This payment as well as the requested information must be received in our office *on or before 11/15/2011*. (Emphasis supplied).

The proposed "Special Forbearance Agreement" states the Deans had accrued a total arrearage of $65,444.07 on their loan as of 7 November 2011. According to the Deans, they did not receive the proposed "Special Forbearance Agreement" and cover letter until after the 15 November 2011 deadline for returning the document had passed. On 28 November 2011, Aurora sent the Deans a letter informing them that their "request for a foreclosure alternative option is considered closed" because "[w]e did not receive one of the req[uired] payments under your forbearance agreement."

On 6 December 2011, the Deans received notice Aurora was initiating foreclosure proceedings. On 15 June 2012, Aurora sent a letter to the Deans

informing them the servicing of the loan was being transferred to Nationstar. During this time, the hearings in the foreclosure proceeding were continued.

According to the Deans, on 17 August 2012, a Nationstar representative, allegedly named "Lisa," contacted Mr. Dean and they purportedly orally negotiated the terms of a restructured and modified loan to avoid foreclosure. When the Deans received the modification documents from Nationstar, the terms stated in the documents were different from the terms which had allegedly been negotiated over the telephone between Mr. Dean and "Lisa."

The Deans retained another attorney, Jane Dearwester, to communicate with Nationstar on their behalf. Ms. Dearwester sent a letter to Nationstar on 27 August 2012 and advised them that the terms contained in the modification documents were different than the orally negotiated terms. On 29 October 2012, Nationstar sent an additional set of modification documents to the Deans, but these documents were identical to the documents which were sent earlier in August 2012. Attorney Dearwester sent yet another letter to Nationstar expressing that the new set of modification documents was identical to the last set Nationstar had sent.

On 7 November 2012, an employee of Nationstar, Brittanee Clark, purportedly contacted the Deans to confirm that the terms set forth in the two previously sent sets of modification documents were not the same as to the terms Nationstar had allegedly agreed to over the phone on 17 August 2012. However, on 14 November

2012, Ms. Clark emailed the Deans to inform them Nationstar would not honor the terms discussed in the phone conversation between Mr. Dean and "Lisa."

On 1 July 2013, Nationstar filed a verified complaint against the Deans and Wells Fargo seeking: (1) a declaration that the First South Deed of Trust is a valid encumbrance on the Property; (2) in the alternative, judicial reformation of the First South Deed of Trust to include the legal description contained within Exhibit A and relating back to 1 June 2004; and, (3) in the alternative, an order quieting title; and, (4) a declaration that the First South Deed of Trust has priority over the Wachovia Deed of Trust. No further action was taken in the foreclosure proceedings against the Property once Nationstar's verified complaint was filed.

The Deans initially filed an answer, and later an amended answer on 13 June 2014. In their amended answer, the Deans asserted, in part, the doctrine of unclean hands and the statute of limitations against Nationstar's reformation claim.

On 29 September 2014, the trial court entered a consent order between Nationstar and Wells Fargo, which ordered:

> 1. That the First South Deed of Trust is a valid encumbrance on the Property having a priority date of June 1, 2004.
>
> 2. That the First South Deed of Trust has priority over the Wachovia Deed of Trust[.]

The consent order dismissed Nationstar's remaining claims against Wells Fargo.

Following discovery, Nationstar filed a motion for summary judgment on 21 March 2017. The Deans filed four affidavits in opposition to Nationstar's motion for summary judgment, including the affidavits of Mr. Dean; Jane Dearwester; Claire Ellington, an assistant to Jane Dearwester; and, Laura Elizabeth Ceva, an attorney who worked with Jane Dearwester.

Following a hearing on Nationstar's motion for summary judgment, the trial court entered an order granting summary judgment in Nationstar's favor. With respect to Nationstar's declaratory judgment claim, the trial court's order decreed that the street address for the Property listed in First South's Original Deed of Trust "is a legally sufficient description as of June 1, 2004 when said Deed of Trust was recorded." The trial court's order alternatively decreed that the First South Deed of Trust be "reformed as of June 1, 2004 to include 'Exhibit A' originally omitted, but subsequently included in the Deed of Trust as was re-recorded on November 24, [2004.]"

The Deans filed timely notice of appeal from the trial court's order granting Nationstar's motion for summary judgment.

## II. Jurisdiction

Jurisdiction lies in this Court pursuant to N.C. Gen. Stat. § 7A-27(b)(1) (2017).

## III. Standard of Review

Summary judgment is appropriate where "the pleadings, depositions, answers

to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law." N.C. Gen. Stat. § 1A-1, Rule 56(c) (2017). The trial court must deny a summary judgment motion if any genuine issue of material fact exists. *Forbis v. Neal*, 361 N.C. 519, 524, 649 S.E.2d 382, 385 (2007). An issue of fact is genuine where supported by substantial evidence, and "is material if the facts alleged would constitute a legal defense, or would affect the result of the action, or if its resolution would prevent the party against whom it is resolved from prevailing in the action." *Koontz v. City of Winston-Salem*, 280 N.C. 513, 518, 186 S.E.2d 897, 901 (1972).

"Moreover, . . . all inferences of fact . . . must be drawn against the movant and in favor of the party opposing the motion." *Page v. Sloan*, 281 N.C. 697, 706, 190 S.E.2d 189, 194 (1972) (internal quotation marks and citations omitted). A verified complaint may be treated as an affidavit for summary judgment purposes if it: "(1) is made on personal knowledge, (2) sets forth such facts as would be admissible in evidence, and (3) shows affirmatively that the affiant is competent to testify to the matters stated therein." *Id.* at 705, 190 S.E.2d at 194 (citing N.C. Gen. Stat. § 1A-1, Rule 56(e)).

This Court reviews appeals from a trial court's grant of summary judgment *de novo*. *Stratton v. Royal Bank of Canada*, 211 N.C. App. 78, 81, 712 S.E.2d 221, 226

(2011).

## IV. Analysis

The Deans argue the trial court erred by granting Nationstar's motion for summary judgment. They assert genuine issues of material fact exist to preclude summary judgment on Nationstar's declaratory judgment and reformation claims.

We first address the Deans' argument with regard to the trial court's grant of summary judgment on Nationstar's reformation claim. The Deans contend their evidentiary forecast was sufficient to show a genuine issue of material fact exists on whether the applicable statute of limitations bars Nationstar's claim for judicial reformation of the First South Deed of Trust. The Deans also contend a disputed genuine issue of material fact exists on whether Nationstar and Aurora's prior conduct bars an award of equitable relief.

### A. Judicial Reformation

Nationstar seeks to reform the Original Deed of Trust, recorded on 1 June 2004, to include the omitted Exhibit A. "Reformation is a well-established equitable remedy used to reframe written instruments where, through mutual mistake or the unilateral mistake of one party induced by the fraud of the other, the written instrument fails to embody the parties' actual, original agreement." *Metropolitan Property And Cas. Ins. Co. v. Dillard,* 126 N.C. App. 795, 798, 487 S.E.2d 157, 159 (1997) (citation omitted).

The trial court has the authority to reform a deed of trust. Deeds of trust are written instruments that are subject to reformation claims. *Noel Williams Masonry v. Vision Contractors of Charlotte*, 103 N.C. App. 597, 603, 406 S.E.2d 605, 608 (1991). "In an action for reformation of a written instrument, the plaintiff has the burden of showing that the terms of the instrument do not represent the original understanding of the parties . . . ." *Hice v. Hi-Mil, Inc.*, 301 N.C. 647, 651, 273 S.E.2d 268, 270 (1981) (citations omitted). "If the evidence is strong, cogent, and convincing that the deed, as recorded, did not reflect the agreement between the parties due to a mutual mistake caused by a drafting error, a deed can be reformed." *Drake v. Hance*, 195 N.C. App. 588, 592, 673 S.E.2d 411, 414 (2009) (citing *Parker v. Pittman*, 18 N.C. App. 500, 505, 197 S.E.2d 570, 573 (1973)).

"There is a strong presumption in favor of the correctness of the instrument as written and executed, for it must be assumed that the parties knew what they agreed and have chosen fit and proper words to express that agreement in its entirety." *Hice*, 301 N.C. at 651, 273 S.E.2d at 270 (internal quotation marks, citation, and emphasis omitted). "[E]quity for the reformation of a deed or written instrument extends to the inadvertence or mistake of the draftsman who writes the deed or instrument." *Crews v. Crews*, 210 N.C. 217, 221, 186 S.E. 156, 158 (1936) (citation and internal quotation marks omitted).

No genuine issue of material fact exists that the Deans and First South Bank

mutually intended for the First South Deed of Trust to encumber the Property as a first lien. The First South Deed of Trust would have contained the parties' intended legal description of the Property, but for the Deans' closing attorney's mistake of inadvertently failing to attach Exhibit A to the First South Deed of Trust when he initially recorded it on 1 June 2004.

The Deans failed to present evidence to dispute that they, along with First South Bank, mutually intended for the First South Deed of Trust to include Exhibit A and contain the legal description contained therein.

### B. Standing

The Deans contend a disputed genuine issue of material fact exists of whether Nationstar is a real party in interest and possesses standing to assert its reformation claim. They assert Nationstar has not produced evidence to show it is the owner or holder of the note secured by the First South Deed of Trust.

The Deans argue a supposed conflict of evidence exists between Nationstar's verified complaint and Nationstar's response to the Deans' request for admissions to foreclose summary judgment. In Nationstar's verified complaint, it averred it is "now the owner and holder of the Loan and the First South Deed of Trust." In Nationstar's response to the Deans' request for admissions, it stated "The owner of the promissory note is Wells Fargo[.]" However, Nationstar also stated in the Deans' request for admissions that it is the holder, and is in possession, of the original promissory note

the Deans' granted to First South Bank.

This apparent conflict between whether Wells Fargo or Nationstar is the *owner* of the note is immaterial to Nationstar's standing to seek reformation of the First South Deed of Trust. As noted, there are multiple notes and deeds of trust on record which affect this Property.

Under the Uniform Commercial Code, the holder of an instrument may enforce it, even if the holder is not the owner of the instrument. N.C. Gen. Stat. § 25-3-301 (2017). Therefore, the holder of a note "qualifies as a real party in interest" in an action upon the note. *In re Foreclosure of Webb*, 231 N.C. App. 67, 69-70, 751 S.E.2d 636, 638 (2013). Under our precedents, "the holder of a note [secured by a Deed of Trust] can enforce both the note and the Deed of Trust." *Greene v. Tr. Servs. of Carolina, LLC*, 244 N.C. App. 583, 593,781 S.E.2d 664, 671-72 (2016) (citing N.C. Gen. Stat. § 47-17.2 (2013)).

Uncontradicted evidence in the form of Nationstar's verified complaint and admissions indicates Nationstar is the holder of the note secured by the First South Deed of Trust. The Deans assert no evidence to either refute or create a genuine issue of material fact regarding Nationstar's status as the holder of the original First South note. The Deans' argument is overruled.

*C. Statute of Limitations*

The Deans also argue the statute of limitations bars Nationstar's reformation

claim. The Deans assert the three-year statute of limitations of N.C. Gen. Stat. § 1-52(9) for claims based in "fraud or mistake" applies. N.C. Gen. Stat. § 1-52(9) specifies a three-year limitations period "[f]or relief on the ground of fraud or mistake; the cause of action shall not be deemed to have accrued until the discovery by the aggrieved party of the facts constituting the fraud or mistake." N.C. Gen. Stat. § 1-52(9) (2017).

Nationstar asserts the applicable statute of limitations is N.C. Gen. Stat. § 1-47(2), which provides ten years to commence an action "[u]pon a sealed instrument or an instrument of conveyance of an interest in real property, against the principal thereto." N.C. Gen. Stat. § 1-47(2) (2017).

According to well-established canons of statutory construction, "[w]here one of two statutes might apply to the same situation, the statute which deals more directly and specifically with the situation controls over the statute of more general applicability." *Fowler v. Valencourt*, 334 N.C. 345, 349, 435 S.E.2d 530, 532 (1993) (quoting *Trs. of Rowan Tech. Coll. v. J. Hyatt Hammond Assocs.*, 313 N.C. 230, 238, 328 S.E.2d 274, 279 (1985)). "When two statutes apparently overlap, it is well established that the statute special and particular shall control over the statute general in nature, even if the general statute is more recent, unless it clearly appears that the legislature intended the general statute to control." *Id.* at 349, 435 S.E.2d at 533 (quoting *Trs. of Rowan Tech.*, 313 N.C. at 238, 328 S.E.2d at 279).

Here, the signature section of the First South Deed of Trust, as originally recorded on 1 June 2004, explicitly shows the instrument was signed under seal by the Deans' closing attorney, under the authority of the Deans' executed power of attorney, and on their behalf. It state's, in relevant part: "BY SIGNING UNDER SEAL BELOW, Borrower accepts and agrees to the terms and covenants contains in pages 1 through 12 of this Security Instrument . . . ." The word "Seal" is affixed in parentheses beside each signature line, including the signature lines for Clarence E. Dean, Jr. and Kelly A. Dean.

The Deans do not challenge that they intended for their closing attorney, Charles D. Evans, to prepare and sign the First South Deed of Trust on their behalf and under their power of attorney. The First South Deed of Trust is clearly a sealed instrument and is indisputably "an instrument of conveyance of an interest in real property." N.C. Gen. Stat. § 1-47(2); *see Allsbrook v. Walston,* 212 N.C. 225, 228, 193 S.E. 151, 151-52 (1937) (holding the word seal next to a signature line is sufficient to make the document a sealed instrument).

As between N.C. Gen. Stat. §§ 1-47(2) and 1-52(9), the former is the more specific statute of limitations that applies to Nationstar's reformation claim under the ten-year limitations period. No genuine issue of material fact exists that Nationstar filed its verified complaint on 26 June 2013, which is within ten years of the execution of the First South Deed of Trust on 1 June 2004.

### D. Unclean Hands

The Deans assert the doctrine of unclean hands equitably bars, or estops, Nationstar from bringing its reformation claim. The doctrine of unclean hands is based upon the premise, "he who comes into equity must come with clean hands." *S.T. Wooten Corp. v. Front St. Constr. LLC*, 217 N.C. App. 358, 362, 719 S.E.2d 249, 252 (2011).

The Deans base their unclean hands argument upon the allegation that Nationstar's predecessor-in-interest, Aurora, instructed the Deans to intentionally miss a payment on their loan to allow for a modification. Aurora allegedly agreed to loan modifications, but then sent the forbearance agreement too late for the Deans to return it by the stated deadline. The Deans also contend Nationstar and Aurora reneged on oral agreements to restructure and modify the loan to avoid foreclosure.

If Nationstar and Aurora did make the alleged representations and oral agreements to modify the Deans' loan, such agreements would be barred by the statute of frauds. The Deans' loan under the note and First South Deed of Trust was $1,820,000. N.C Gen. Stat. § 22-5 requires a signed writing for all commercial loan commitments in excess of $50,000. N.C Gen. Stat. § 22-5 (2017).

Presuming, *arguendo*, Nationstar cannot equitably assert the statute of frauds, the doctrine of unclean hands would still be inapplicable to bar Nationstar's reformation claim.

This Court has held that equitable "relief is not to be denied because of general iniquitous conduct." *Ray v. Norris*, 78 N.C. App. 379, 384, 337 S.E.2d 137, 141 (1985) (citation omitted). If "the alleged misconduct giving rise to the assertion of unclean hands arises out of matters which are merely collateral to the transaction for which equitable relief is sought, the equitable remedy is not barred." *S.T. Wooten*, 217 N.C. App. at 362, 719 S.E.2d at 252. Here, the transaction, for which Nationstar seeks equitable relief of reformation, concerns the execution and recordation of the First South Deed of Trust on 1 June 2004. The alleged oral promises of Aurora to modify the terms of the loan secured by the First South Deed of Trust were made years after the First South Deed of Trust was executed and are wholly collateral to the original transaction completed on 1 June 2004. *See id.*

Based upon uncontradicted "clear, cogent, and convincing evidence," the Deans and First South Bank intended for the First South Deed of Trust to encumber the Property. Except for the Deans' closing attorney's error, the First South Deed of Trust would have included the full legal description in Exhibit A. Nationstar has standing to assert its reformation claim, as successor-in-interest to First South Bank and as holder of the note secured by the First South Deed of Trust. *See* N.C. Gen. Stat. § 25-3-301; *Greene*, 244 N.C. App. at 593, 781 S.E.2d at 671-72. Nationstar brought its reformation claim within the applicable ten-year statute of limitations. N.C. Gen. Stat. § 1-47(2). The doctrine of unclean hands does not bar Nationstar's reformation

claim. The Deans' arguments are overruled.

The Deans also assert the trial court erred by overruling their motions to strike the affidavits of Siggle Shaw and Meredith Guns, submitted by Nationstar. Siggle Shaw's affidavit was offered by Nationstar to refute the Deans' affirmative defense of the three-year statute of limitations. Siggle Shaw averred that Aurora and Nationstar had no notice of Exhibit A's absence from the original First South Deed of Trust until a title search was conducted in preparation for Aurora initiating foreclosure in December 2011. Presuming*, arguendo*, the trial court erred in overruling the Deans' motion to strike, because the ten-year, and not the three-year, statute of limitations applies, the Deans cannot show prejudice.

The affidavit of Meredith Guns was offered by Nationstar in support of its declaratory judgment claim to have the street address in the First South Deed of Trust declared a legally sufficient description. *See, e.g.,* 1 James A. Webster, Jr., *Webster's Real Estate Law in North Carolina* § 10.41 (Patrick K. Hetrick & James B. McLaughlin, Jr., eds., 6th ed. 2011) ("While not advisable, buildings are sometimes described by reference to street and number in conveyances of city land."). Her affidavit concerns the street numbering system in the incorporated Town of Kill Devil Hills, N.C. Meredith Guns' affidavit raises no genuine issue of material fact with regards to Nationstar's reformation claim. Presuming, *arguendo,* the trial court erred in overruling the Deans' motion to strike, the Deans cannot show prejudice because

Nationstar was entitled to summary judgment on its reformation claim.

## V. Conclusion

The Deans have failed to show any genuine issues of material fact exists to preclude summary judgment for Nationstar. The trial court did not err by entering its order decreeing the First South Deed of Trust reformed to include the later recorded Exhibit A. Because the trial court was warranted in awarding Nationstar summary judgment on its reformation claim, it is unnecessary to address the Deans' remaining arguments concerning Nationstar's declaratory judgment claim. The order of the trial court granting summary judgment to Nationstar is affirmed. *It is so ordered.*

AFFIRMED.

Judges INMAN and BERGER concur.