IN THE SUPREME COURT OF NORTH CAROLINA

2021-NCSC-90

No. 296A19

Filed 13 August 2021

WELLS FARGO BANK, N.A.

v.

FRANCES J. STOCKS, in his capacity as the executor of the estate of LEWIS H. STOCKS aka LEWIS H. STOCKS, III, TIA M. STOCKS, and JEREMY B. WILKINS, in his capacity as commissioner

Appeal pursuant to N.C.G.S. § 7A-30(2) from the decision of a divided panel of the Court of Appeals, 266 N.C. App. 228, 831 S.E.2d 378 (2019), reversing and remanding an order granting summary judgment for plaintiff entered on 25 April 2018 by Judge Henry W. Hight in Superior Court, Wake County. On 1 April 2020, the Supreme Court allowed plaintiff Wells Fargo Bank, N.A., and defendant Frances J. Stocks' respective petitions for discretionary review of additional issues. Heard in the Supreme Court on 28 April 2021.

*The Law Office of John T. Benjamin, Jr., P.A., by John T. Benjamin, Jr., and Jake R. Garris, for plaintiff-appellant.*

*Howard, Stallings, From, Atkins, Angell & Davis, P.A., by Douglas D. Noreen and Rebecca H. Ugolick, for defendant-appellant Frances J. Stocks.*

*Janvier Law Firm, PLLC, by Kathleen O'Malley, for defendant-appellee Tia M. Stocks.*

NEWBY, Chief Justice.

In this case we determine whether the trial court properly granted summary

judgment for plaintiff reforming a deed of trust and allowing foreclosure. We first determine when a cause of action accrues for reformation of a deed of trust based on mutual mistake. Section 1-52(9) of the North Carolina General Statutes provides a three-year statute of limitations for relief based on a mistake, which begins running when the mistake is "discovered." A party "discovers" a mistake when that party knows of the mistake or should have known in the exercise of due diligence. Drafting a deed of trust with a mistake apparent on its face, without more, is insufficient to put a party on notice of a mistake. Here the document was drafted with an error in 2005. The first circumstance that would have led plaintiff to question the drafting of the document happened upon review of the document when default occurred. Thus, the claim accrued after default in January of 2015. As such, plaintiff's action was timely filed on 26 May 2017. Further, there is no genuine issue of material fact as to whether the parties intended the deed of trust to secure the defaulted promissory note. Therefore, plaintiff is entitled to summary judgment. The decision of the Court of Appeals is reversed.

¶ 2        Defendant Tia Stocks[1] is the sole record owner of certain real property located at 1504 Harth Drive in Garner, North Carolina (the Property). The Property has been her primary residence since 2002, when her late father, Lewis Stocks, helped her

---

[1] Frances J. Stocks, in his capacity as the executor of the estate of Lewis Stocks, is also named as a defendant. Because he argued in alignment with plaintiff at this Court, we only refer to Tia Stocks as defendant.

obtain financing to purchase it. On 22 March 2002, Lewis Stocks executed a limited power of attorney which appointed defendant as his attorney-in-fact to "execut[e] the Settlement Statement and loan documents on [his] behalf to effect the purchase" of the Property. On 27 March 2002, Lewis Stocks, through defendant as his attorney-in-fact, executed a promissory note in the amount of $87,300 to First Union National Bank (First Note). On the same day, defendant, together with Lewis Stocks—again through defendant as his attorney-in-fact—executed a deed of trust (First Deed of Trust) to pledge the Property as collateral to secure the First Note. The First Deed of Trust defined the "Borrower" as both defendant and Lewis Stocks. The general warranty deed conveying the Property to defendant and the First Deed of Trust were recorded on 28 March 2002 in the Wake County Registry. Defendant then authorized First Union National Bank to draft monthly payments due under the First Note from a bank account in her name. Defendant made all the monthly payments, and Lewis Stocks, though the only named borrower on the First Note, did not make any payments.

¶ 3        In 2005, Lewis Stocks refinanced the loan with defendant's consent. On 12 January 2005, Lewis Stocks executed a promissory note in the amount of $83,034 to Wachovia Bank, N.A.[2] (Second Note). Like the First Note, the Second Note only

---

[2] Before Lewis Stocks refinanced the loan, First Union National Bank merged with Wachovia Bank, N.A., which then became the holder of the First Note and the beneficiary under the First Deed of Trust.

defined Lewis Stocks as the "Borrower." Section 4(B) of the Second Note states that the Borrower "will be in Default under this Note . . . if [Borrower] fail[s] to make any payment." Section 5 of the Second Note states that "a separate Security Instrument[ ] on real property . . . described in the Security Instrument and dated the same date as this Note, protects the Note Holder from possible losses that might result." The proceeds of the Second Note were used to satisfy the First Note. On 28 January 2005, Wachovia Bank recorded a Certificate of Satisfaction, cancelling the First Deed of Trust.

¶ 4        On 19 January 2005, only defendant executed a deed of trust (Second Deed of Trust) intending to pledge the Property as collateral to secure the Second Note in the amount of $83,034. According to defendant, Lewis Stocks "called [defendant] into his medical office and told" her she needed to sign the Second Deed of Trust so that he could refinance the loan. No one from Wachovia was present when defendant signed the Second Deed of Trust. Though defendant was not listed as a "Borrower" on the Second Note, the Second Deed of Trust defines the "Borrower" as only defendant. The Second Deed of Trust states that "Borrower is indebted to [Wachovia Bank] in the principal sum of U.S. $83,034.00 which indebtedness is evidenced by Borrower's Note dated 01/12/05." Lewis Stocks, who is the only defined "Borrower" on the Second Note, did not execute the Second Deed of Trust, nor does the Second Deed of Trust list him as a borrower. By omitting Lewis Stocks, the Second Deed of Trust does not effectively

reference the Second Note. The Second Deed of Trust was recorded on 4 February 2005 in the Wake County Registry.

Wachovia Bank drafted other documents in conjunction with the loan transaction that properly differentiated between Lewis Stocks as the borrower under the Second Note and defendant as the owner of the Property, which was intended to secure the Second Note. These documents included a Homeowner's Insurance Notice and a Clerical Error Authorization form. Defendant then authorized Wachovia Bank to draft monthly installment payments from her bank account and made all the payments due under the Second Note until 2015. Lewis Stocks did not make any payments due under the Second Note.

Lewis Stocks died on 23 May 2014, and defendant stopped making payments several months thereafter. Defendant's last payment to Wells Fargo Bank, N.A.[3] (plaintiff) under the Second Note was made on 13 December 2014, and default under the Second Note occurred in January of 2015. Plaintiff sent defendant a letter on 26 February 2015 stating that the Second Note was in default and that plaintiff may exercise its available rights against the Property. In accordance with its general business practices, plaintiff first referred the account to its attorneys in August of

---

[3] On 20 March 2010, Wachovia merged with Wells Fargo Bank, N.A., which then became the holder of the Second Note and the beneficiary under the Second Deed of Trust. For readability, our reference to "plaintiff" includes Wells Fargo and its predecessors-in-interest.

2016 to commence foreclosure proceedings. While preparing for defendant's appeal of the clerk's non-judicial foreclosure order in January of 2017, plaintiff's counsel discovered that the Second Deed of Trust did not adequately describe the Second Note. After discovering the mistake, plaintiff commenced the present action for reformation and judicial foreclosure on 26 May 2017.

¶ 7 During discovery defendant filed responses to plaintiff's request for admissions, wherein she admitted that: (1) the collateral under the First Deed of Trust and Second Deed of Trust was to be the same; (2) the Property was to serve as collateral for the Second Note; (3) the purpose of the Second Deed of Trust was to secure repayment under the Second Note; (4) she understood the purpose of the Second Deed of Trust when she signed it; and (5) she consented to Lewis Stocks' plan to enter into the refinance transaction. In her admissions, however, defendant also stated that she "understood that by signing the [Second] Deed of Trust, [she] was acting as a surety and that [her] home was acting as collateral for the loan."

¶ 8 Plaintiff thereafter moved for summary judgment, first arguing that the Second Deed of Trust should be reformed to accurately describe the Second Note as the parties intended by stating that "Lewis H Stocks is indebted to Lender in the principal sum of U.S. $83034.00 which indebtedness is evidenced by Lewis H Stocks' Note dated 01/12/05 and extensions, modifications and renewals thereof." Plaintiff also argued the Second Deed of Trust should define the "Borrower" as "Tia M Stocks

and Lewis H Stocks," as the parties intended. Plaintiff further argued that it properly brought its claim within the applicable three-year statute of limitations.

¶ 9          In response defendant contested whether the parties intended the Second Deed of Trust to secure the Second Note. Defendant submitted the following in her affidavit:

> In 2005, my father (Dr. Lewis H. Stocks) applied for and obtained a second loan from the plaintiff-bank in the amount of $83,034. I was not a party to this loan, did not attend the loan closing, and was completely unaware that my father was obtaining a loan. I never applied for the loan, never signed a promissory note, nor did I receive the proceeds of the loan. I later learned the second loan was used by my father to pay off the first loan he obtained from the plaintiff-bank. In addition to not attending the loan closing, I was never provided with any RESPA documents, Truth-in-Lending documents, or a closing statement (HUD-1). The entire 2005 loan was conducted in secrecy and any documents having to do with the closing of this loan were kept from me. It later became apparent to me that the reason these documents were not made available to me was because the plaintiff-bank and my father wanted to conceal from me the true nature of this loan.

The trial court granted summary judgment in plaintiff's favor.

¶ 10          A divided panel of the Court of Appeals reversed. *Wells Fargo Bank, N.A. v. Stocks*, 266 N.C. App. 228, 236, 831 S.E.2d 378, 384 (2019). The Court of Appeals began its analysis by determining whether the ten-year statute of limitations in N.C.G.S. § 1-47(2) or the three-year statute of limitations in N.C.G.S. § 1-52(9) applies to plaintiff's claim for reformation. *Id.* at 232, 831 S.E.2d at 381. In doing so, the

Court of Appeals cited the rule that "where two statutes deal with the same subject matter, the more specific statute *will prevail over* the more general one." *Id.* at 234, 831 S.E.2d at 382 (quoting *Fowler v. Valencourt*, 334 N.C. 345, 349, 435 S.E.2d 530, 532 (1993)). The Court of Appeals agreed with its prior decision in *Nationstar Mortgage, LLC v. Dean*, which held that N.C.G.S. § 1-47(2) is more specific because it applies to claims involving a sealed instrument. *Stocks*, 266 N.C. App. at 234, 831 S.E.2d at 382 (quoting *Nationstar Mortgage, LLC v. Dean*, 261 N.C. App. 375, 384, 820 S.E.2d 854, 860 (2018)). Thus, the Court of Appeals held that N.C.G.S. § 1-47(2) applies to plaintiff's claim "to the exclusion of [N.C.G.S. §] 1-52(9)." *Stocks*, 266 N.C. App. at 234 n.2, 831 S.E.2d at 382 n.2.

¶ 11    Having decided that N.C.G.S. § 1-47(2) applies, the Court of Appeals then noted that N.C.G.S. § 1-47(2) does not include express language creating a discovery rule. *Stocks*, 266 N.C. App. at 235, 831 S.E.2d at 383. Thus, the Court of Appeals held that plaintiff's claim accrued, and the statute of limitations began to run, when the Second Deed of Trust was executed in January of 2005. *Id.* Because plaintiff filed its claim on 26 May 2017, outside the ten-year statute of limitations period, the Court of Appeals held that N.C.G.S. § 1-47(2) bars plaintiff's claim for reformation.[4] *Id.* As such, and because the unreformed Second Deed of Trust did not secure the Second

---

[4] Because the Court of Appeals found plaintiff's claim for reformation of the Second Deed of Trust was time-barred, the Court of Appeals did not address defendant's argument that she intended to pledge the Property as a surety for her father's loan.

Note, the Court of Appeals reversed the trial court's grant of summary judgment on plaintiff's claims for reformation and judicial foreclosure. *Id*. at 236, 831 S.E.2d at 384.

¶ 12       The dissent, however, would have applied N.C.G.S. § 1-52(9) to plaintiff's claim. *Id*. at 239–40, 831 S.E.2d at 385 (Arrowood, J., dissenting). The dissent noted that though "a cause of action based on fraud or mistake does not accrue until the aggrieved party discovers the [mistake]," under *Nationstar* such a claim "cannot be brought after ten years even if the underlying fraud or mistake would not have been reasonably discovered during that time." *Id*. at 238, 831 S.E.2d at 385. This interpretation, the dissent argued, contravenes "the importance of protecting defrauded parties, or those injured by a mistake." *Id*. Thus, the dissent concluded that it "runs counter to logic and our case law" to hold that an action for fraud or mistake is barred under N.C.G.S. § 1-47(2) "simply because the document at issue is a sealed instrument." *Id*. at 239, 831 S.E.2d at 385. Plaintiff appealed to this Court based on the dissenting opinion at the Court of Appeals. Plaintiff also filed a petition for discretionary review as to additional issues, which this Court allowed.

¶ 13       This Court reviews appeals from summary judgment de novo. *In re Will of Jones*, 362 N.C. 569, 573, 669 S.E.2d 572, 576 (2008). Summary judgment is proper if "there is no genuine issue as to any material fact and . . . any party is entitled to judgment as a matter of law." N.C.G.S. § 1A-1, Rule 56(c) (2019). "All facts asserted

by the [nonmoving] party are taken as true and . . . viewed in the light most favorable to that party." *Ussery v. Branch Banking & Tr. Co.*, 368 N.C. 325, 334, 777 S.E.2d 272, 278 (2015) (quoting *Dobson v. Harris*, 352 N.C. 77, 83, 530 S.E.2d 829, 835 (2000)). Summary judgment is appropriate when the moving party establishes "the lack of any triable issue of fact." *Texaco, Inc. v. Creel*, 310 N.C. 695, 699, 314 S.E.2d 506, 508 (1984) (quoting *Kidd v. Early*, 289 N.C. 343, 352, 222 S.E.2d 392, 399 (1976)).

¶ 14    Defendant first argues there is a genuine dispute of material fact as to whether plaintiff filed its claim within the applicable statute of limitations. Whether a cause of action is barred by the statute of limitations is a question of law "when the bar is properly pleaded and the facts are admitted or are not in conflict." *Pembee Mfg. Corp. v. Cape Fear Const. Co., Inc.*, 313 N.C. 488, 491, 329 S.E.2d 350, 353 (1985) (citing *Little v. Rose*, 285 N.C. 724, 208 S.E.2d 666 (1974); *Teele v. Kerr*, 261 N.C. 148, 134 S.E.2d 126 (1964)).

¶ 15    "If [a] deed or written instrument fails to express the true intention of the parties, it may be reformed . . . whe[n] the failure is due to mutual mistake of the parties . . . ." *Crawford v. Willoughby*, 192 N.C. 269, 271, 134 S.E. 494, 495 (1926) (citation omitted). N.C.G.S. § 1-52(9) applies to claims "for relief on the ground of . . . mistake," while N.C.G.S. § 1-47(2) applies to claims "[u]pon a sealed instrument or an instrument of conveyance of an interest in real property, against the principal thereto." To determine which statute of limitations applies, we must look to the

purpose of the cause of action. If the purpose is to enforce a sealed instrument, then N.C.G.S. § 1-47(2) applies. But when, as here, the action is to reform an instrument because of fraud or mistake, N.C.G.S. § 1-52(9) applies. In *Nationstar*, the Court of Appeals cited the correct principle that the more specific statute controls over the more general statute of limitations. *Nationstar*, 261 N.C. App. at 383, 820 S.E.2d at 860 (citing *Fowler*, 334 N.C. at 349, 435 S.E.2d at 532). Nonetheless, it failed to examine the nature of the cause of action. *Nationstar*, 261 N.C. App. at 384, 820 S.E.2d at 860. Thus, the Court of Appeals' decision in *Nationstar* is overruled.

¶ 16        Under N.C.G.S. § 1-52(9), a "cause of action shall not be deemed to have accrued until the discovery by the aggrieved party of the facts constituting the fraud or mistake." N.C.G.S. § 1-52(9). A party "discovers" the mistake when the "mistake was known or should have been discovered in the exercise of ordinary diligence." *Peacock v. Barnes*, 142 N.C. 215, 218, 55 S.E. 99, 100 (1906). A mistake in the drafting process alone is insufficient to place the drafting party on inquiry notice. *See Pelletier v. Interstate Cooperage Co.*, 158 N.C. 403, 407–08, 74 S.E. 112, 113–14 (1912) (citations omitted) (holding "that a party will not be affected with notice of a mistake existent in the deed" that is due to the "mistake of the draughtsman"); *Modlin v. Roanoke R. & Lumber Co.*, 145 N.C. 218, 227, 58 S.E. 1075, 1078 (1907) (citations omitted) (stating "that the registration of the deed, or knowledge of its existence . . . [is] not of itself sufficient notice of" a mistake); *Peacock*, 142 N.C. at 217, 55 S.E. at

101 (holding that erroneous description of land in a recorded deed was insufficient, without more, to put a party on inquiry notice). If an original drafting error were sufficient to place the drafter on notice, the discovery rule would be unnecessary because the statute of limitations would always begin to run on the date of the original error. *See id.* Rather, "there must be facts and circumstances sufficient to put the [drafting party] on inquiry which, if pursued, would lead to the discovery of the facts constituting the [mistake]." *Vail v. Vail*, 233 N.C. 109, 117, 63 S.E.2d 202, 208 (1951) (citations omitted).

¶ 17          Here the cause of action accrued when plaintiff should have discovered the error in the loan documents. The mistake itself, that the Second Deed of Trust refers to defendant as the borrower under the Second Note instead of Lewis Stocks, was a drafting error. Defendant argues the unusual circumstances surrounding the execution of the Second Deed of Trust should have put plaintiff on inquiry notice. Defendant notes that she executed the Second Deed of Trust one week after Lewis Stocks executed the Second Note, in Lewis Stocks' office at his direction, and without a representative from plaintiff present. Moreover, plaintiff drafted other documents that properly differentiated between Lewis Stocks as the borrower and defendant as the Property owner.

¶ 18          These circumstances may have raised a question regarding the execution of the documents. They do not, however, raise a question regarding the drafting. Had

plaintiff reviewed the documents after they were executed, as defendant argues plaintiff should have, plaintiff would have found the execution was without error. In other words, since the signature matched the defined borrower on the face of the document, there was no reason to question the drafting of the Second Deed of Trust. As such, these facts and circumstances are insufficient to place plaintiff on inquiry notice of the drafting error.

¶ 19    Further, from March of 2005 to December of 2014, plaintiff received every payment due under the Second Note. Given the timely payments, there was no reason to investigate the loan instruments. Therefore, the first circumstance that would have led plaintiff to question the validity of the Second Deed of Trust was the January 2015 default and the subsequent foreclosure action. In the exercise of due diligence, the earliest plaintiff should have discovered the drafting mistake was during this time. Having filed the lawsuit on 26 May 2017, the cause of action to reform the Second Deed of Trust was timely filed within the three-year statute of limitations period.

¶ 20    Defendant next argues there is a genuine dispute of material fact as to whether the parties intended the Second Deed of Trust to secure repayment of the Second Note. "If [a] deed or written instrument fails to express the true intention of the parties, it may be reformed . . . whe[n] the failure is due to the mutual mistake of the parties . . . ." *Crawford*, 192 N.C. at 271, 134 S.E. at 495 (citations omitted). "The

phrase 'mutual mistake' means a mistake common to all the parties to a written instrument and usually relates to a mistake concerning its contents or its legal effect." *State Tr. Co. v. Braznell*, 227 N.C. 211, 214–15, 41 S.E.2d 744, 746 (1947) (quoting *M. P. Hubbard & Co., Inc. v. Horne*, 203 N.C. 205, 208, 165 S.E. 347, 349 (1932)). Facts admitted in a request for admissions under Rule 36 of the North Carolina Rules of Civil Procedure are "conclusively established." N.C.G.S. § 1A-1, Rule 36(b) (2019). Therefore, such facts are "sufficient to support a grant of summary judgment." *Goins v. Puleo*, 350 N.C. 277, 280, 512 S.E.2d 748, 750 (1999) (citing *Rhoads v. Bryant*, 56 N.C. App. 635, 289 S.E.2d 637 (1982)). Moreover, a party's own affidavit "opposing summary judgment does not overcome the conclusive effect of [that party's] previous admissions." *Rhoads*, 56 N.C. App. at 637, 289 S.E.2d at 639.

¶ 21    Here defendant admitted that she understood the Property was to serve as collateral under the Second Deed of Trust to secure repayment of the indebtedness evidenced by the Second Note. Defendant cannot use her affidavit to contradict these binding admissions. Further, defendant's contention that she was acting as a surety for her father's loan does not overcome her admissions that she understood that the purpose of the Second Deed of Trust was to pledge the Property as collateral for the loan under a traditional deed of trust arrangement. *See Skinner v. Preferred Credit*, 361 N.C. 114, 120, 638 S.E.2d 203, 209 (2006) ("A deed of trust is a three-party arrangement in which the borrower conveys legal title to real property to a third party

trustee to hold for the benefit of the lender until repayment of the loan." (citing 1 James A. Webster, Jr., *Webster's Real Estate Law in North Carolina* § 13-1, at 538 (Patrick K. Hetrick & James B. McLaughlin, Jr. eds., 5th ed. 1999))). Thus, there is no genuine dispute of material fact as to whether the parties intended the Second Deed of Trust to secure repayment of the Second Note.

Because there is no genuine issue of material fact as to whether plaintiff's claim was timely filed or whether the Second Deed of Trust was intended to secure repayment of the Second Note, the Second Deed of Trust should be reformed to match the parties' intent. As such, the trial court properly granted summary judgment for plaintiff on its claims for reformation and judicial foreclosure. The decision of the Court of Appeals is reversed.

REVERSED.